**Thomas J. MIKULICH, Individually and as Special Administrator of the Estate of Jennifer M. Mikulich, deceased, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 88–2V.

United States Claims Court.

Sept. 14, 1989.

Edward P. Rudolph, Elm Grove, Wis., for petitioner.

John Lodge Euler, Deputy Director, Torts Branch, Civ. Div., U.S. Dept. of Justice, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, Washington, D.C., for respondent. Barbara J. Hudson, Dept. of Health and Human Services, of counsel.

OPINION [1]

ANDEWELT, Judge.

This is a child vaccine action brought pursuant to the National Childhood Vaccine Injury Act of 1986 as amended, 42 U.S.C. §§ 300aa–1 *et seq.* (Supp. V 1987) (the Act). The Act establishes a program for payment of compensation for injuries or deaths caused by the administration of vaccines. Petitioner, Thomas J. Mikulich, alleges that the October 5, 1985, death of his daughter, Jennifer Mikulich, was the result of the administration of a DPT (diphtheria, tetanus, pertussis) vaccine. Mr. Mukulich filed the instant petition both in an individual capacity and in his capacity as Special Administrator of the Estate of Jennifer M. Mukulich.

The petition initially was considered by a Special Master pursuant to subsection 2112(c) of the Act. On July 27, 1989, the Special Master issued a Report and Recommended Decision (hereinafter Report) recommending an award of $250,000 to the Estate of Jennifer M. Mikulich plus reasonable attorneys' fees and other costs in the amount of $48,667.81. The petition presently is before the court on an objection to the Special Master's Report filed by respondent, the Secretary of Health and Human Services.

There is no dispute as to the recommended award of $250,000 to the Estate of Jennifer M. Mikulich. The parties stipulated to petitioner's entitlement to that award and this court agrees that the stipulated facts meet the statutory requirements.[2] Respondent's sole objection in-

---

1. This opinion may contain information that may not be disclosed to a nonparty. *See* 42 U.S.C. § 300aa–12 (1987). Accordingly, within fourteen (14) days of the date of filing of this opinion, the parties shall designate any material subject to § 300aa–12 and such designated material will be deleted for public access. If on review of this opinion there are no objections filed within the fourteen (14) day period, then it shall be deemed that there is no material subject to § 300aa–12.

2. Subsection 2113(a) of the Act provides, in pertinent part:

   (1) Compensation shall be awarded under the Program to a petitioner if the court finds on the record as a whole—

volves the recommended additional award of $48,667.81 in attorneys' fees and other costs. Respondent does not dispute that reasonable attorneys' fees and other costs totaled $48,667.81. Rather, respondent contends that subsection 2115(b) of the Act places a $30,000 ceiling on an award of attorneys' fees and other costs in this case. For the reasons set forth herein, the court agrees with respondent's interpretation of subsection 2115(b) and the award of attorneys' fees and other costs shall be limited to $30,000.

## I.

Subsection 2115 of the Act governs the calculation of compensation for vaccine-related injuries or deaths. Subsection 2115(a), entitled "General rule," covers "compensation ... for a vaccine-related injury or death associated with the administration of a vaccine *after* the effective date of this subpart." (Emphasis added.) Paragraphs (1)–(4) of subsection 2115(a) provide that compensation for such an injury or death shall include ((1)(A)) post-judgment and ((1)(B)) pre-judgment medical and related expenses, ((2)) $250,000 for a vaccine-related death, ((3)) lost earnings, and ((4)) an award for pain and suffering and emotional distress. In addition, pursuant to subsection 2115(e), any judgment awarding compensation shall include reasonable attorneys'· fees and other costs. Subsection 2115(e) provides, in pertinent part:

(1) The judgment of the United States Claims Court on a petition filed under section 300aa–11 of this title awarding compensation shall include an amount to cover—

(A) reasonable attorneys' fees, and

(B) other costs.

Compensation for injuries or deaths related to vaccines administered prior to the effective date of subsection 2115, *i.e.*, so-called retroactive cases, is covered under subsection 2115(b). Jennifer M. Mikulich

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title, and

received the suspect DPT inoculation prior to that effective date, and, hence, petitioner's claim is covered under subsection 2115(b). Subsection 2115(b) as originally enacted provided, in pertinent part, that compensation in retroactive cases "shall only include the compensation described in paragraphs (1)(A) and (2) of subsection [2115](a)." As amended in 1987, subsection 2115(b) specifies compensation that may and may not be included in retroactive cases and contains a limitation on the amount of compensation that may be awarded. The interpretation of that limitation is the central issue raised in respondent's objection to the Special Master's Report. Subsection 2115(b) provides, in pertinent part, with the limitation underscored:

Compensation awarded under the Program [for retroactive cases] may not include the compensation described in paragraph (1)(B) of subsection (a) of this section and may include attorneys' fees and other costs included in a judgment under subsection (e) of this section, *except that the total amount that may be paid as compensation under paragraphs (3) and (4) of subsection (a) of this section and included as attorneys' fees and other costs under subsection (e) of this section may not exceed $30,000.*

(Emphasis added.) Petitioner, respondent, and the Special Master, in effect, agree that subsection 2115(b) should be interpreted to authorize the payment in pre-Act cases of all forms of compensation available in post-Act cases (*i.e.*, all forms of compensation listed in subsections 2115(a) and 2115(e)), except to the extent that subsection 2115(b) limits the availability or amount of such compensation.

## II.

Respondent's objection to the Special Master's Report relates to the proper interpretation of the $30,000 limitation contained in the underscored portion of subsection 2115(b) above. Petitioner, respondent,

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

and the Special Master agree that the $30,000 ceiling places some limitation in retroactive cases on the unlimited compensation for reasonable attorneys' fees and other costs otherwise provided in subsection 2115(e). There is disagreement, however, as to the scope of that limitation on fees and costs and as to whether, in addition to fees and costs, the $30,000 ceiling encompasses compensation under paragraphs (3) (lost earnings) and (4) (pain and suffering and emotional distress) of subsection 2115(a).

Respondent contends that subsection 2115(b) places a $30,000 ceiling on the combined total of *all* attorneys' fees and other costs awarded under subsection 2115(e) plus *all* compensation awarded under paragraphs (3) and (4). Petitioner, however, alleges, and the Special Master agrees, that the $30,000 ceiling should be interpreted as limiting only the award of attorneys' fees and costs associated with proving compensation under paragraphs (3) and (4). Hence, petitioner and the Special Master do not view the $30,000 ceiling as limiting either (a) the total amount of compensation available under paragraphs (3) and (4) or (b) attorneys' fees and costs associated with other issues raised by the petition. Since this action does not involve a claim for compensation under paragraphs (3) and (4), the Special Master concludes that the $30,000 ceiling does not apply and, hence, petitioner is entitled to $48,667.81 to cover reasonable attorneys' fees and other costs.

### III.

Upon an initial reading, respondent's proposed interpretation of subsection 2115(b) appears correct. Subsection 2115(b) seems to consist of three distinct clauses. The first clause provides that one of the categories of compensation available under subsection 2115(a) in post-Act cases, pre-judgment medical and related expenses (paragraph (1)(B)), is not available in retroactive cases ("compensation ... may not include the compensation described in paragraph (1)(B) of subsection [2115](a)"). The second clause permits the court to award subsection 2115(e) attorneys' fees and other costs in retroactive cases ("compensation ...

may include attorneys' fees and other costs included in a judgment under subsection [15](e)"). The third clause appears to create a general exception as to the compensation otherwise available under subsection 2115(b) (", except that ...").

The third clause provides that the $30,000 ceiling applies to "the total amount." In using the term "total amount," the third clause appears to anticipate the totaling together of distinct amounts to be defined later in the clause. Respondent's proposed interpretation fulfills this expectation in that it requires the totaling together of the distinct amounts:

■ paid as compensation under paragraphs (3) and (4) of subsection (a) of this section *and*

■ included as attorneys' fees and other costs under subsection (e) of this section.

(Emphasis added.) Under this interpretation, the underscored "and" would serve grammatically as a coordinating conjunction linking together the description of one amount with the description of a distinct second amount, both of which are to be included in "the total amount." *See, e.g.,* 1 G. Curme, *A Grammar of the English Language, Parts of Speech* 92–93 (1986).

The Special Master essentially parsed subsection 2115(b) into the same three distinct clauses. In examining the first clause, the Special Master focused on the change from the phrase "shall only include" in the original version of subsection 2115(b) to the phrase "may not include" in the amended version. The Special Master concluded that this change served to expand the scope of allowable compensation to every element of compensation provided under subsection 2115(a) not expressly excluded by subsection 2115(b). As to the second clause, the Special Master concluded that the clause makes clear that attorneys' fees and other costs are included within the scope of the term "compensation."

Next, the Special Master concluded that the crucial third, ", except that ..." clause was meant to serve as a limitation only

with respect to attorneys' fees described in the immediately preceding second clause, and not as a limitation on any other compensation available under subsection 2115(b). Crucial to this assessment was the Special Master's interpretation of the words "and included as" in the third clause. Unlike respondent, the Special Master did not view the word "and" as a coordinating conjunction linking together the descriptions of two separate and distinct amounts, the sum of which would produce the required "total amount" (*i.e.,* the amount awarded for compensation under paragraphs (3) and (4), and the amount of attorneys' fees and other costs awarded under subsection 2115(e)). Rather, the Special Master reasoned, in effect, that the phrase "and included as attorneys' fees and other costs" was subordinate to and modified and limited the preceding reference to compensation under paragraphs (3) and (4). The Special Master, in effect, interpreted "and included as" to be synonymous with "that is attributable to" and concluded that the $30,000 ceiling limits only compensation under paragraphs (3) and (4) *that is attributable to* attorneys' fees and other costs. The Special Master explained his reasoning as follows:

> The words say that the exception to the clause providing for the award of attorneys' fees and costs is that the compensation awarded in pre-Act cases for lost income and pain and suffering "and included as attorneys' fees and other costs under subsection (e) . . . may not exceed $30,000." That is to say, that portion of the compensation which is attributable to attorneys' fees and costs relating to proving the lost income and pain and suffering portion of the claim may not exceed $30,000. The key words are "and included as." They limit the scope of the exception to items which are properly included as reasonable attorneys' fees and other costs under subsection (e). What Congress did here was expand the scope of compensation available in pre-Act cases to include lost income and pain and suffering, but limit the amount of costs and fees which could be awarded in connection with proving the same.

Congress could have achieved the result urged by respondent had it chosen to do so. For example, it could have substituted "including" or "together with" for "and included as," or it could have omitted the word "included" entirely, but it did not do so.

(Footnote omitted.)

## IV.

With the benefit of hindsight, Congress could have drafted subsection 2115(b) with greater precision. But of the two proposed interpretations of the $30,000 ceiling in subsection 2115(b), respondent's interpretation fits the statutory language far more comfortably.

Close analysis of the words "and included as" does not reveal an Achilles' heel in respondent's proposed interpretation. As noted above, "and" serves as a coordinating conjunction and, hence, links references to two distinct amounts to be summed together. The use of the verb "include" rather than a different verb appears to flow from the wording of subsection 2115(e). Subsection 2115(e) provides that a judgment "shall include" an amount to cover reasonable attorneys' fees and other costs. Therefore, if Congress intended in subsection 2115(b) to place a ceiling on all attorneys' fees awarded under subsection 2115(e), it would be reasonable to track the language of subsection 2115(e) by using the phrase "included as attorneys' fees and other costs under subsection (e) of this section." Moreover, the words "and included as" are consistent in another way with an intent to place within the $30,000 ceiling the total amount of compensation under paragraphs (3) and (4) and attorneys' fees and other costs under subsection 2115(e). Use of "included as" results in the two pertinent verbs in the third clause being parallel in construction, *i.e.,* the amount "*paid as* compensation under paragraphs (3) and (4)" is combined with the amount "*included as* attorneys' fees and other costs under subsection (e)." (Emphasis added.)

The Special Master's interpretation does not sit quite as comfortably within the

wording of the statute. It does not employ "and" in its typical modern-day function as a coordinating conjunction. *See, e.g.,* 2 G. Curme, *A Grammar of the English Language, Syntax* 170–73 (1986). If Congress intended the phrase "and included as attorneys' fees" to qualify the amount paid as compensation under paragraphs (3) and (4), it could have used a subordinating conjunction, such as "that," to make its intent clear (*e.g.,* "compensation under paragraphs (3) and (4) ... [that is] included as attorneys' fees").

In addition, interpreting the $30,000 limitation as applying only to compensation under paragraphs (3) and (4) that is attributable to attorneys' fees and other costs would presume that attorneys' fees and other costs are included as a part of "the total amount ... paid as compensation under paragraphs (3) and (4)." But a literal reading of subsection 2115 indicates they are not. Compensation under paragraphs (3) and (4) of subsection 2115(a) is exclusive of attorneys' fees and other costs, *i.e.,* none of the amount paid as compensation under paragraphs (3) and (4) is attributable to attorneys' fees and other costs. Attorneys' fees are derived instead from subsection 2115(e), which provides merely that a judgment awarding compensation "shall include ... attorneys' fees." In this context, if Congress had intended to make the $30,000 ceiling applicable only to attorneys' fees and other costs related to compensation under paragraphs (3) and (4) of subsection 2115(a), it reasonably could have been expected to say so directly rather than referring as it did to "the total amount."

In sum, respondent's proposed interpretation is reasonable and flows readily from the statutory wording. The Special Master's alternative interpretation is not as obvious and requires the application of at least some force to fit within the statutory language.

**3.** Petitioner contends that the reference to limiting compensation awards in the legislative history refers to the $250,000 limitation in cases where the administration of a vaccine resulted in a death. But the $250,000 limitation was

## V.

The 1987 amendment was adopted as part of the massive Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, 101 Stat. 1330. The only pertinent legislative history that has been cited is a report of the Committee on the Budget of the House of Representatives, H.R.Rep. No. 391, 100th Cong., 1st Sess. 690 (1987), *reprinted in* 1987 U.S.Code Cong. & Admin. News 2313–64. While the legislative history is admittedly sparse, it tends to support respondent's proposed interpretation of subsection 2115(b).

First, under the heading "PURPOSE AND SUMMARY," the Committee report states that "[t]he legislation would amend the National Childhood Vaccine Compensation Act ... to limit compensation awards." Respondent's proposed interpretation of subsection 2115(b) would "limit compensation awards" to the extent that it places subsection 2115(e) attorneys' fees and other costs under a ceiling that was not present in the Act as originally enacted. To the contrary, petitioner's interpretation would have the effect of expanding compensation available in retroactive cases. As explained above, as originally enacted, the Act did not permit any compensation under paragraphs (3) and (4) in retroactive cases. Interpreting the 1987 amendment as authorizing unlimited compensation under paragraphs (3) and (4) plus related attorneys' fees and other costs up to $30,000 would result in a significant expansion of previously available compensation.[3]

Next, the Committee report contains an October 15, 1987, letter in which the Acting Director of the Congressional Budget Office appears to interpret the 1987 amendment in precisely the same manner as respondent proposes. The letter states:

This bill would allow these awardees to also receive compensation for lost income [ (paragraph (3)) ] and a payment for pain and suffering [ (paragraph (4)) ]. Although the types of compensation pay-

present in the Act as originally enacted and, therefore, cannot account for the statement that the 1987 amendment would "limit compensation."

able would be expanded under the bill, a limit of $30,000 would be imposed on the total of payments for income loss, attorneys' fees and pain and suffering.[4]

The placement of the reference to "attorneys' fees" between the references to "income loss" and "pain and suffering" is significant. If the Acting Director concluded that the limitation applied only to attorneys' fees associated with demonstrating income loss and pain and suffering, he presumably would not have referred to "the total of payments for income loss, attorneys' fees and pain and suffering."

Next, the section-by-section analysis in the Committee report appears to express a similar view:

> The Act allows [retroactive] cases to recover only for ongoing medical expenses and for attorney fees and costs.[5] The amendments also authorize payment for lost earnings and pain and suffering, but limit the amount of payment that can be made for all compensation except future medical expenses to a total of as much as $30,000, depending upon demonstrated need and particular circumstances. The court may allocate the compensation for these items as it finds appropriate in each individual case.

Finally, a letter providing the views of the Department of Health and Human Services states that in a September 22, 1987, letter to the Committee on Ways and Means, Congressmen Dingell and Waxman had suggested a variety of ways to reduce the costs of funding the Act, including "[l]imiting attorney's fees." Only respondent's interpretation places a limitation on the total amount of attorneys' fees available.

## VI.

In addition to the wording of subsection 2115(b), the Special Master finds support for his interpretation in an analysis of the economic effects that would flow from respondent's alternative interpretation. The Special Master reasons that imposing a $30,000 limit on the total payments for income loss, attorneys' fees, and pain and suffering would (1) undesirably place clients and attorneys in direct financial conflict with one another, (2) unfairly limit an attorney's fees to an amount that does not reasonably reflect the value of the time spent on the case, and (3) result in the 1987 amendment producing a lower rather than higher total recovery in many cases even though Congress intended the amendment to expand compensation to include recovery under paragraphs (3) and (4).

These assessments of economic effects are accurate. As implied in the above-cited section-by-section analysis in the Committee report, this court can address the conflict of financial interest to some extent by allocating attorneys' fees and compensation under paragraphs (3) and (4) when the combination of the fees and compensation exceeds the $30,000 ceiling. But this ability to allocate fees and compensation does not eliminate all potential conflict in financial interest. An attorney would face a conflict, for example, in deciding whether to pursue compensation under paragraphs (3) and (4) because a decision to pursue such compensation ultimately could diminish the amount of fees awarded. Moreover, in complex cases, the $30,000 ceiling on attorneys' fees could possibly impair a petitioner's ability to secure complete, competent representation in an action under the Act.

But Congress confronted a variety of policy decisions in deciding what type of compensation package, if any, to create both for retroactive and prospective vaccine cases. The language of subsection 2115(b) makes clear that Congress decided to treat petitioners in retroactive cases less generously than those in post-Act cases; the dispute herein involves simply by how much. The policy trade-offs inherent in

---

4. A later part of the letter states that "CBO assumes attorneys fees and other legal costs to be about $50,000 per case." But this appears to refer to prospective cases which are not subject to any statutory ceiling on reasonable attorneys' fees and other costs.

5. This description is apparently addressed to retroactive injury cases in which medical expenses can continue rather than retroactive death cases. In death cases, pursuant to subsection 2115(a)(2), the estate of the deceased is entitled to a $250,000 award.

subjecting retroactive petitioners to a $30,-000 ceiling on attorneys' fees, lost earnings, and pain and suffering and emotional distress are plausible, *i.e.*, it is not apparent that Congress could not have intended to make such trade-offs. In this regard, it should be stressed that even under respondent's proposed interpretation of subsection 2115, the Act would serve to benefit petitioners in retroactive cases by creating an alternative litigation route that otherwise would not be available. If this route is viewed as unsatisfactory for any reason, including the cap on attorneys' fees, an aggrieved party with a retroactive claim can ignore the Act's provisions and proceed in state or federal court as it would have in the absence of the Act.[6]

### Conclusion

For the reasons set forth above, petitioner is awarded $250,000 in his capacity as Special Administrator of the Estate of Jennifer M. Mikulich. In addition, petitioner is awarded $30,000 in attorneys' fees and other costs. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

See also 12 Cl.Ct. 496.

---

**6.** Respondent's interpretation of subsection 2115(b) can also be argued to be consistent with the general rule of statutory construction that waivers of sovereign immunity should be strictly construed. *See Bennett v. Department of the Navy*, 699 F.2d 1140, 1145 (Fed.Cir.1983). Respondent's interpretation results in a narrower waiver in that it places a limit on attorneys' fees and other costs and does not subject the United States in retroactive cases to unlimited liability for compensation under paragraphs (3) and (4).