John **MOORHEAD** and Carolyn Moorhead, parents and natural Guardians of Donald Moorhead, a minor, Petitioners,

v.

The **UNITED STATES**, Respondent.

No. 88–27V.

United States Claims Court.

Nov. 27, 1989.

Gregory A. Olson, Indiana, Pa., for petitioners.

Gemma Flamberg, Rockville, Md., with whom were Acting Asst. Atty. Gen. Stuart E. Schiffer and Deputy Director John Lodge Euler, for respondent.

## OPINION [1]

LYDON, Senior Judge.

This vaccine case comes before the court on the objections of respondent Secretary of the Department of Health and Human Services (HHS) to the Report of the Special Master. The Report of the Special Master was filed on October 5, 1989, pursuant to § 300aa–12(c)(2)(E) of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 *et seq.*, as amended, (Supp. V 1987) (Vaccine Act). The Special Master found that petitioners John and Carolyn Moorhead were entitled to compensation under the Act for injuries suffered by their minor son Donald, which were caused by the administration of a measles, mumps, rubella (MMR) vaccine. Respondent filed its objections to the Report on October 25, 1989, pursuant to Vaccine Rule 19. Respondent contends that the Special Master failed to offset compensation by reasonably anticipated Medicaid benefits, and that the Special Master erroneously failed to apply the statutory $30,000 limit to compensation for the sum total of lost wages, pain and suffering, and attorney's fees and costs.

---

1. This opinion may contain information that may not be disclosed to a nonparty. *See* 42 U.S.C. § 300aa–12 (1987). Accordingly, within 14 days of the date of filing this opinion, the parties shall designate any material subject to § 300aa–12 and such designated material will be deleted for public access. If on review of this opinion there are no objections filed within the 14 day period, then it shall be deemed that there is no material subject to § 300aa–12.

## I

In his Report, the Special Master found that Donald Moorhead was a healthy baby prior to the administration of his first MMR vaccination on March 31, 1980. After receiving the shot, Donald became ill and was admitted to the hospital on April 10, 1980, where he was noted to be in *status epilepticus.* Donald was subsequently diagnosed as suffering from a seizure disorder, encephalitis and other injuries. Donald will continue to suffer from the seizure disorder throughout his life.

As Donald's natural guardians, John and Carolyn Moorhead filed a Petition for vaccine compensation on October 3, 1988. Although respondent filed an Answer in the form of a general denial on December 30, 1988, respondent's attorney subsequently withdrew from the case on May 9, 1989. Respondent did not appear and was not represented by counsel at the hearing held by the Special Master on August 4, 1989. However, on October 25, 1989, subsequent to the filing of the Special Master's Report, another attorney filed an appearance on respondent's behalf, along with respondent's objections to the Special Master's Report. Petitioners have not filed an objection to the Special Master's Report, nor have they filed a reply to respondent's objections.

## II

The Special Master's Report consists of two parts, a liability determination and recommendation, and a damages determination and recommendation.

### A

As to the liability issue, the Special Master found that petitioners had established facts sufficient to support an award for compensation under the requirements of the Vaccine Act. The court hereby adopts as its own the Special Master's proposed findings of fact and conclusions of law determining that petitioners are entitled to compensation under the Vaccine Act for the injuries suffered by their son Donald. *See* § 300aa–12(d)(2) and § 300aa–15(a)(2).

Respondent does not object to this portion of the Special Master's Report.

### B

With regard to the issue of damages, the Special Master made the following proposed findings of fact.

Due to [Donald's] vaccine-related injuries, petitioners have incurred over $1000 in medical and related expenses. No previous award or settlement of a civil action has been collected by petitioners. The petitioners' case is supported by a preponderance of the evidence in the record. There is no preponderance of evidence showing that Donald's illness was caused by factors unrelated to the administration of the [MMR] vaccine. [Donald's] condition will reduce [his] ability to earn a living through productive employment. A rehabilitation plan was developed by a competent rehabilitation expert who carefully determined the cost of care that Donald's health will require. An expert economist determined the net present value of the rehabilitation plan to be $456,137. Donald's injury has resulted in his loss of earnings. Donald would have worked productively for at least forty-seven years if not for his injury. Based on the average weekly earnings of workers in the non-farm sector, Donald's lost earnings are $188,503. Donald now experiences and will continue to experience actual pain and suffering and emotional distress as a consequence of his vaccine-related seizure disorder. The value of that pain and suffering is $75,-000. Petitioners' attorney has earned $6,000 of attorney's fees in this matter. An amount of $100 per hour is a reasonable hourly rate for petitioners' attorney. Petitioners incurred $11,403.37 in other costs of litigation in this matter.

Based on these findings of fact, the Special Master proposed the following conclusions of law on the issue of damages.

The limitation of compensation under section [300aa]–15(b) applies strictly to attorney's fees and is applicable to petitioners whose vaccine was administered prior to the effective date of the Act

852

[pre-Act case]. Petitioners should be awarded compensation for a vaccine-related injury under sections [300aa]–15(a)(1), –15(a)(3) and –15(e).... Petitioners are entitled to compensation for pain and suffering and lost earnings under section 300aa–15.

The Special Master recommends that petitioners receive a total award of $737,043.37. This total embraces the following components: $456,137 for the unreimbursable cost of Donald's future medical expenses under section 300aa–15(a)(1)(A); $188,503 for Donald's future lost earnings under section 300aa–15(a)(3)(A); $75,000 for Donald's actual and projected pain and suffering and emotional distress under section 300aa–15(a)(4); and $17,403.37 for attorney's fees ($6,000) and other costs ($11,403.37).

■ The court hereby adopts the Special Master's proposed findings of fact and conclusions of law regarding the award of $456,137 to compensate petitioners for Donald's future unreimbursable medical expenses under section 300aa–15(a)(1)(A). Respondent does not challenge the Special Master's Report in this regard. However, respondent does challenge the Special Master's failure to consider reasonably anticipated payments under a state Medicaid program as an offset to the compensation awarded.

Respondent contends that the Vaccine Act requires the Special Master to consider Donald's potential eligibility for Medicaid benefits in setting the amount of compensation to be awarded to petitioners. Under section 300aa–15(a)(1)(A) of the Vaccine Act, compensation awarded to petitioners shall include actual unreimbursable post-judgment expenses for custodial, medical, remedial and rehabilitative services. Sections 300aa–15(g) and 300aa–15(h) of the Act require the exclusion from the compensation award, however, of any payments for items or services that should be provided or financed by other private or public agencies.

Pursuant to these statutory provisions, the Special Master observed that petitioners needed to establish the amount of such post-judgment expenses as well as the absence of such exclusions with competent testimony and documentation. At the hearing conducted by the Special Master, petitioners presented testimony and written reports prepared by several expert witnesses, including a psychologist, a rehabilitation consultant, and a forensic economist. Based on the evidence presented, the Special Master concluded in his Report that petitioners had met their burden of proof by establishing the amount of post-judgment expenses and the absence of exclusions. Although respondent had an opportunity to challenge petitioners' evidence at the hearing, it failed to appear and raise the objections that it now raises to the Special Master's Report.

■ The rule of law has been articulated by many courts of appeal, as well as the Supreme Court, that an issue not raised at the trial level generally will not be considered at the appellate level. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). *See also Cecil v. Department of Transp., FAA,* 767 F.2d 892, 894 (Fed.Cir.1985); *Synan v. Merit Sys. Protection Bd.,* 765 F.2d 1099, 1102 (Fed. Cir.1985); *Lizut v. Department of Army,* 717 F.2d 1391, 1396 (Fed.Cir.1983). Although the Claims Court is not an appellate court, it functions in much the same manner when reviewing a Special Master's factual findings and legal conclusions in Vaccine Act proceedings. The Claims Court, however, is empowered by the Act to make a de novo determination of any matter in a vaccine petition, unlike an appellate court. It is not, however, required to do so by the Act. The court feels it is unnecessary to make a de novo determination in this case on the matter of whether Donald will be eligible at some future date for Medicaid benefits. In light of the Special Master's conclusion that petitioners have met their burden of establishing the absence of reasonably expected payments from a state Medicaid program, the court finds that respondent has made no showing that pay-

ments under a Medicaid program can "reasonably be expected to be made." *See* § 300aa–15(g). There is absolutely no evidence in the record relative to Medicaid and its application now or in the future to Donald's situation. The court finds this potential Medicaid offset to be speculative and conjectural in this case and thus payment relative thereto cannot "reasonably be expected to be made." Therefore the court adopts the Special Master's recommendation that petitioners be awarded $456,137 for the unreimbursable cost of Donald's future custodial, medical, remedial and rehabilitative care.[2]

The court does not adopt *in toto,* however, the Special Master's proposed findings of fact and conclusions of law pertaining to the three remaining elements of compensation: lost earnings, pain and suffering, and attorney's fees and costs. Specifically, the court has two objections to the Special Master's recommendations. First, the court disagrees with the Special Master's conclusion that $100 per hour is a reasonable rate at which to compensate petitioners' attorney. Second, the court disagrees with the Special Master's conclusion that the limitation of compensation found in section 300aa–15(b) applies strictly to attorney's fees, and not to the combined award for lost earnings, pain and suffering, and attorney's fees and costs.

▮▮▮▮ Although the court agrees with the Special Master's conclusion that $125 per hour requested by petitioners' attorney is an unreasonable rate in this case and merits reduction, the court feels that even the $100 per hour rate set by the Special Master is excessive. As the Special Master pointed out in his Report, petitioners' attorney supported his claim for attorney's fees with no more than a bare assertion that he spent 71.2 hours on the case. In addition,

he submitted the affidavit of a colleague who stated that he was aware of the claims involved in the case, and that a rate of $125 per hour is "fair and reasonable for litigation of this kind." However, the court believes that such "generalized and conclusory 'information and belief' affidavits from friendly attorneys ... will not suffice.... Nor is it helpful if the affiant simply states that he is familiar with the attorney and the litigation and that he thinks the fee request is reasonable." *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1325–26 (D.C.Cir.1982). Furthermore, the Special Master pointed out that the reduced complexity of Vaccine Act litigation does not justify a higher fee, and in fact justifies a reduction of the requested hourly rate by 20%, from $125 to $100 per hour. As further justification for the rate reduction, the Special Master noted that the attorney's performance in handling this case was not marked by diligence.

Given these circumstances, the court finds that $75 per hour is a reasonable hourly rate at which to compensate petitioners' attorney in this case. As the court has recently held, $75 per hour is a reasonable lodestar or starting point for the determination of a reasonable hourly rate at which to compensate attorneys under the Vaccine Act. *See Pusateri v. Secretary of the Dep't of Health and Human Servs.,* 18 Cl.Ct. 828 (Cl.Ct.1989). This rate received the imprimatur of the Supreme Court in the Equal Access to Justice Act (EAJA) case *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988) ("Congress thought that $75 an hour was generally quite enough public reimbursement for lawyer's fees, whatever the local or national market might be."), and it is considered a fair and reasonable

---

**2.** If Donald should qualify for Medicaid benefits in the future, petitioners would be obligated to reimburse the Vaccine Program for any payments they receive under Medicaid. This obligation is clearly reflected in section 300aa–17(a), which states that the Vaccine Program "shall be subrogated to all rights of the petitioners with respect to the vaccine-related injury ... for which compensation was paid." In order to

enforce this subrogation provision, the Vaccine Act's legislative history provides that the "court may refer the record of a compensation proceeding to the Secretary [of HHS] and to the Attorney General with recommendations as to subrogation." H.R.Rep. No. 908, 99th Cong., 2d Sess., pt. 1, at 23, *reprinted in* 1986 U.S.CODE CONG. & ADMIN.News 6287, 6344, 6364.

starting or lodestar rate for Vaccine Act cases.

As the Supreme Court has stated, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). In the present case, petitioners' attorney failed to produce any evidence of the hourly rate he customarily charges fee-paying clients, nor did he produce any evidence of the prevailing market rates in the community for lawyers of similar skill and experience. Due to the attorney's failure to meet his burden of proof regarding his entitlement to an hourly rate of $125, the court feels that an hourly rate of $75 is adequate compensation for his legal services and efforts in this case. Respondent offered no objection to the Special Master's $100 hourly rate determination.

The court adopts the Special Master's recommendation that the attorney's claim of 71.2 hours expended in this case be reduced to 60 hours, because the attorney failed to produce any time records supporting his claim. Therefore, the attorney's fee award in this case will be computed on the basis of 60 hours of time reasonably expended at the reasonable hourly rate of $75. The court agrees with the Special Master that the lodestar method of computing a reasonable attorney's fee is appropriate here, *i.e.,* the reasonable number of hours expended multiplied by a reasonable hourly rate. *See Pusateri, supra,* 18 Cl.Ct. at 829. The lodestar method produces a total attorney's fee award of $4,500.

The court adopts the Special Master's recommendation that costs be awarded in the amount of $11,403.37.

Finally, the court rejects the Special Master's conclusion in his Report that the $30,000 limitation in section 300aa–15(b) on compensation awards in pre-Act cases applies only to attorney's fees, and specifically only to those attorney's fees that are incurred in proving lost earnings and pain and suffering. Responent also disputes this interpretation in its objections to the Special Master's Report.

The Claims Court has held in three recent vaccine cases that the $30,000 cap applies to the combined total of the following three elements of compensation awarded to petitioners in pre-Act cases: lost earnings, pain and suffering, and attorney's fees and costs. *See Shaw v. Secretary of the Dep't of Health and Human Servs.,* 18 Cl.Ct. 646 (Cl.Ct.1989); *Bazan v. Secretary of the Dep't of Health and Human Servs.,* 18 Cl.Ct. 309 (Cl.Ct.1989); *Mikulich v. Secretary of the Dep't of Health and Human Servs.,* 18 Cl.Ct. 253 (Cl.Ct. 1989).

The Special Master's Report recommends compensation in the amount of $188,503 for Donald's future lost earnings, $75,000 for pain and suffering and emotional distress, and $17,403.37 for attorney's fees ($6,000) and other costs ($11,403.37). The recommended compensation for these three elements totals $280,906.37. This figure exceeds the statutory $30,000 cap by $250,906.37. The court has already reduced the attorney's fee award from $6,000 to $4,500, which decreases the third element of compensation, for attorney's fees and costs, from $17,403.37 to $15,903.37. This leaves $14,096.63 of the $30,000 cap to be apportioned between the remaining two elements: lost earnings, and pain and suffering. The Special Master awarded $75,000 for pain and suffering, although he noted that petitioners did not include such a claim in their petition for relief. Since petitioners did not request damages for pain and suffering, the court feels it is unnecessary to apportion any of the remaining $14,096.63 to this element. The entire $14,096.63 will be awarded to petitioners for Donald's future lost earnings, a claim upon which petitioners did submit ample expert testimony and documentation.

### III

For reasons set forth above, petitioners, as parents and natural guardians of Donald

Moorhead, a minor, are awarded $456,137. In addition, petitioners are awarded $30,000, with $4,500 of this amount allocated to attorney's fees, $14,096.63 allocated to lost earnings, and $11,403.37 allocated to other costs. No other costs are to be awarded. The clerk is directed to enter judgment of $486,137 for petitioners in their capacity as parents and natural guardians of Donald Moorhead, a minor.