Henry GUY and Elizabeth Richards as Legal Representatives of the estate of Catherine Richards, Petitioners,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Respondent.

No. 92–779V.

United States Court of Federal Claims.

June 23, 1997.

George P. Hebbler, Jr., New Orleans, LA, for petitioners.

Glenn A. MacLeod, Department of Justice, with whom were Frank W. Hunger, Assistant Attorney General, John L. Euler, Acting Director, and Gerard W. Fischer, Assistant Director, Washington, DC, for respondent.

## OPINION

BRUGGINK, Judge.

In this vaccine case, petitioners seek review of the special master's February 26, 1997 decision on attorneys' fees and costs, under the National Vaccine Injury Compensation Program (Vaccine Program), 42 U.S.C. § 300aa–10 *et seq* (1994). For the reasons set forth below, review is granted in part and denied in part. The court upholds the special master's award of $36,732.00 in attorneys' fees, but modifies upward the amount allowed for costs to $23,105.03.

## BACKGROUND

On November 10, 1992, petitioners sought compensation under the Vaccine Program for injury to their minor daughter, Catherine Richards, allegedly caused by a diphtheria-pertussis-tetanus (DPT) vaccination administered on September 28, 1990. Petitioners claimed that their daughter, Catherine, contracted Guillian–Barre Syndrome (GBS), an "off-table" injury [1], after her DPT immunization. A two-day evidentiary hearing on the issue of entitlement was held on May 12–13, 1994. On February 21, 1995, the special master issued a decision finding petitioners entitled to compensation under the Vaccine Program. The parties reached a settlement on the amount of compensation and filed a

---

1. An off-table injury refers to an injury not specified in the Vaccine Injury Table, 42 U.S.C. § 300aa–14, which represents a list of vaccines and injuries resulting from the administration of such vaccines, for purposes of receiving compensation under the Vaccine Program.

joint stipulation settling the case on July 15, 1996.

On August 22, 1996, petitioners filed an application for attorneys' fees and costs, requesting $89,309.00 in attorneys' fees and $25,686.53 in costs. The Government filed its objections on September 27, 1996. Petitioners filed supplemental information on October 7, 1996, and a reply to respondent's opposition on November 27, 1996. The special master's decision of February 26, 1997, reduced the petitioners' request, awarding $36,732.00 in attorneys' fees and $20,000.00 in costs. On March 26, 1997, petitioners sought review here. Petitioners object to the reduction in the hourly rate (from $175 to $150) and the number of hours allowed for Mr. Hebbler, the lead attorney (from 472.8 to 220.8), and to the reduction in costs expended (from $25,686.53 to $20,000.00).

## DISCUSSION

Under 42 U.S.C. § 300aa–15(e)(1), a special master is authorized to award reasonable attorneys' fees and other costs to petitioners bringing claims under the Vaccine Program. The "reasonableness" requirement applies not only to attorneys' fees but also to costs. *Perreira v. Secretary of HHS*, 27 Fed.Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed.Cir.1994). Review here is limited. A special master is given broad discretion in determining the reasonable amount of attorneys' fees and costs. *Hines on Behalf of Sevier v. Secretary of HHS*, 22 Cl.Ct. 750. 753 (1991). Consequently, the decision of a special master should be set aside only if the reviewing court finds it "to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). "Arbitrary and capricious" is a highly deferential standard of review. It is sufficient that the special master considered all the relevant evidence, drew appropriate inferences and stated a rational basis for the decision. *Hines on Behalf of Sevier v. Secretary of HHS*, 940 F.2d 1518, 1528 (Fed.Cir.1991). In determining the reasonableness of attorneys' fees and costs, the special master may rely on general experience and an understanding of the issues. *Slimfold Mfg. Co. v. Kinkead Indus. Inc.,*

932 F.2d 1453, 1459 (Fed.Cir.1991), *cited in Wasson v. Secretary of HHS*, 24 Cl.Ct. 482, 483 (1991). The special master, however, must support a decision with sufficient findings and adequate legal analysis, so that the reviewing court is able to determine if there was an abuse of discretion. *Wasson*, 24 Cl. Ct. at 483 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

### Attorneys' fees

In determining reasonable attorneys' fees, the special master multiplied the number of hours reasonably expended by a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984). The amount of a reasonable hourly rate should be determined according to the prevailing market rates in the area. *Blum*, 465 U.S. at 896, 104 S.Ct. at 1547–48. The fee applicant bears the burden of establishing the hourly rates claimed and the number of hours expended. *See Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. In support of his claimed rate of $175 per hour, Mr. Hebbler submitted affidavits from two New Orleans attorneys. One of the affiants, Ms. Cummings, provided information that the hourly rates charged in the New Orleans area by attorneys of Mr. Hebbler's experience range from $125 to $300. Another affiant, Mr. Forshag, stated only that "many attorneys" within the community charge between $175 and $300 for legal services, without specifying the type of legal service to which he was referring. In addition, both affidavits provided information on hourly rates charged by attorneys in medical injury cases, without a specific reference to vaccine injury cases.

This court has approved a special master's skepticism in accepting, as proof of a reasonable hourly rate, "generalized and conclusory 'information and belief' affidavits from friendly attorneys." *Bell v. Secretary of HHS*, 18 Cl.Ct. 751, 761 (1989) (quoting *National Assoc. of Concerned Vets. v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C.Cir.1982)). Here, the special master properly based the determination on the Vaccine Program precedent. The special master

began his inquiry with the premise that $175 is considered a top hourly rate under the Vaccine Program, reserved for attorneys experienced in vaccine injury cases who practice in high cost areas. *See Betlach v. Secretary of HHS*, No. 95–3V, 1996 WL 749707 (Fed.Cl. Dec. 17, 1996); *Scheuer v. Secretary of HHS*, No. 90–1639V, 1992 WL 135577 (Cl.Ct. May 21, 1992). The special master then proceeded to examine the hourly rates allowed in six other vaccine cases from high cost areas and with differing attorney experience levels, as well as four vaccine cases from the State of Louisiana. Considering the cost of living in New Orleans and Mr. Hebbler's lack of extensive experience in Vaccine Program litigation, the special master found $150 per hour to be a reasonable hourly rate. The special master's reduction of the hourly rate fell within the range referenced by Mr. Hebbler's own affiant. The special master used a reasonable approach and provided a rational basis in reaching his conclusion regarding the attorney fee rate. This court concludes that the special master did not abuse his discretion in reducing the hourly rate and upholds the rate of $150 per hour for Mr. Hebbler as reasonable.

■ As for the number of hours expended, petitioners claim that two attorneys, Mr. Hebbler and Mr. Fuxan, spent 515.3 hours (472.8 and 42.5, respectively) on this vaccine injury case. The special master found that 240 hours of attorney time was reasonable in this case, allocating 220.8 hours to Mr. Hebbler and 19.2 to Mr. Fuxan. Petitioners object only to the reduction in the number of Mr. Hebbler's hours. The special master reduced the number of hours based on a comparison of the length and complexity of this case with other Vaccine Program precedent. This was appropriate. After discussing the procedural and substantive complexity of seven vaccine injury cases, the special master reached the conclusion that 220.8 hours was reasonable for Mr. Hebbler. The special master had discretion "to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done." *Saxton v. Secretary of HHS*, 3 F.3d 1517, 1521 (Fed.Cir.1993).

In addition, in determining the attorneys' fees. the special master is not limited to the objections raised by respondent. *Moorhead v. United States*, 18 Cl.Ct. 849, 854 (1989). Petitioners point out, however, that in this case, the special master not only reduced the number of hours beyond respondent's objections, but did so despite the fact that his decision was based in large part on respondent's experience and expertise. For example, he found that the majority of respondent's objections were "sound." While this remark arguably is somewhat inconsistent with going beyond the objections raised by respondent, the court treats the remark as innocuous. Notwithstanding it, the special master provided a rational basis for the reduction in the number of hours.

Petitioners also assert that the complexity and novelty of the issues regarding the off-table injury in question justified the full amount of attorneys' fees requested. The court in *Hines*, however, held that "a bald allegation of ... complexity" does not meet the required burden of demonstrating reasonableness in a fee request. 22 Cl.Ct. at 755. Even though a petitioner must establish causation in a case involving an off-table injury, the Vaccine Program eliminates the difficulty of proving manufacturer or physician negligence, or a defective product, thus simplifying the proceeding. *Lolley v. United States*, 18 Cl.Ct. 498, 512 (1989). Furthermore, the court established the connection between GBS and the DPT vaccine almost a year before the petition in this case was even filed. *See Robinson v. Secretary of HHS*, No. 91–01V, 1991 WL 268650 (Cl.Ct. Nov. 27, 1991). This court defers to the special master's determination of complexity and novelty of the issues involved. Because petitioners failed to demonstrate that the special master's decision was arbitrary, capricious, or an abuse of discretion, this court affirms the reduction in the amount of Mr. Hebbler's hours.

### Costs

■ Petitioners requested reimbursement for $25,686.53 in itemized costs. The special master outlined only a few, totaling $917.41, that were not reimbursable, and

then reduced the total amount of costs recoverable by $5,686.53. As a basis for the reduction, the special master stated that he was "perplexed" by the amount of expenses claimed. The special master also concluded that petitioners' costs request was more than double the average award of costs in a comparable case, and thus the reduction was appropriate. The special master, however, failed to explain, taking into account the specific facts of this case, why he deemed reduction to $20,000.00 to be reasonable. He either should have analyzed each item and explained why it was non-recoverable, *see Cain v. Secretary of HHS*, No. 91–817V, 1992 WL 379932 (Fed.Cl. Dec. 3, 1992); *Brewer v. Secretary of HHS*, No. 93–92V, 1996 WL 147722 (Fed.Cl. Dec. 9, 1996), or should have provided a rational basis for a specific lower amount. He failed to do either. Under the circumstances, the general reduction in the amount of costs requested was arbitrary.

Instead of remanding the case to the special master, this court will, with the intent to decrease the litigation expenses for both parties, make its own determination of the reasonable costs recoverable under the Vaccine Program. 42 U.S.C. § 300aa–12(e)(2)(B).

The court will make no reduction for postage ($228.62) and phone ($341.41) expenses incurred in connection with the proceedings because those out-of-pocket expenses are reimbursable. *Bennett v. Department of Navy*, 699 F.2d 1140, 1145 (Fed.Cir.1983); *see Monteverdi v. Secretary of HHS*, 19 Cl. Ct. 409, 435 (1990); *see also Ciotoli v. Secretary of HHS*, 18 Cl.Ct. 576, 594 (1989). Even though postage is a reimbursable expense, use of an overnight delivery on a regular basis generally is not. *See Neher by Neher v. Secretary of HHS*, No. 90–431V, slip op. at 3 (Fed.Cl.Sp.Mstr. July 22, 1993). Petitioners claim $688.40 in Federal Express charges. The court finds that petitioners' use of Federal Express was excessive. Only the $293.25 spent on occasional delivery to the court is deemed reasonable. The court will reduce costs by $395.15 for excessive use of the overnight delivery.

Petitioners request $86.51 for binders, bonded carbon and ribbon, and $112.75 for facsimiles. These expenses are considered overhead, however, and are not compensable. *See Betlach*, 1996 WL 749707, at *2. *Cain*, 1992 WL 379932, at *5.

Petitioners claim $150 as a cost of counsel's admission to the National Vaccine Information Center. The court can only reimburse petitioners for costs incurred in proceedings on the petition in question. 42 U.S.C. § 300aa–15(e)(1). Because such an expense is not attributable to the proceedings on this petition only, the $150 is not allowed.

The rate of $0.08 per page is a reasonable rate for petitioners' photocopying expenditures. *Barnes v. Secretary of HHS*, No. 90–1510V, 1992 WL 185708 (Cl.Ct. July 16, 1992). Costs are reduced by $736.56 for photocopies made at a rate higher than $0.08 per page,[2] as well as $91.28 in claimed photocopying expenses that were not documented by receipts.

As for the work of medical experts in a vaccine injury case, absent special circumstances, the court considers any rate in excess of $200 per hour to be unreasonable and thus not reimbursable. *See Aldridge v. Secretary of HHS*, No. 90–2475V, 1992 WL 153770 (Cl.Ct. Mar. 1, 1993). Accordingly, the court will deduct $250 from the expenses claimed for Dr. deShazo in excess of $200 per hour (three hours were billed at $225 per hour and two hours were billed at $287.5 per hour). Dr. Africk was not paid in excess of $200 per hour. Her affidavit documents that she spent at least fifteen hours working on this case, for which she was paid $2,900.00. Similarly, the court finds that Dr. Zahalsky, even though billing at a rate higher than $200 per hour, was *actually compensated at a rate lower than $200 per hour* (he was paid $5,000.00 for 29.8 hours billed).

The court accepts respondent's argument that experts billing $200 per hour for their services should not be additionally reimbursed for their office overhead (office sup-

---

2. Petitioners paid $2048.05 for 15040 copies at a rate higher than $0.08 per page. The court will allow $1311.49 as a cost of those copies (15040 copies at $0.08 per page, with 9% tax). Accordingly, the court will deduct the difference ($736.56) from petitioners' claim.

plies, administrative or clerical staff); those expenses should be subsumed in the expert's hourly rate, just as secretarial support is included within an attorney's hourly rate and is not reimbursable. *Cf. Higgins v. Secretary of HHS,* No. 92–313V, 1993 WL 93920 (Fed.Cl. Mar. 17, 1993); *Sanko v. Secretary of HHS,* No. 91–95V, slip op. (Fed.Cl.Sp. Mstr. Feb. 25, 1994). The court will deduct $759.25 that Mr. Robert Voogt billed for office supplies ($54.25 for printing mid binding), administrative staff ($540) and clerical staff ($135).

The aforesaid nonreimbursable expenses total $2.581.50. Petitioners' request for $25,686.53 will be reduced by that amount. The court thus awards petitioners $23,105.03 as reasonable expenses.

## CONCLUSION

For the foregoing reasons, the court awards petitioners $36,732.00 as reasonable attorneys' fees and $23,105.03 as reasonable expenses. The Clerk is directed to enter judgment in favor of petitioners in the amount of $59,837.03.

