Stephen J. PUSATERI and Deborah L. Pusateri, as legal representatives of the Estate of Stephen J. Pusateri, II deceased, Petitioners,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 88–63V.

United States Claims Court.

Nov. 17, 1989.

Anthony M. Colantoni, Chicago, Ill., appeared on behalf of petitioners.

No appearance on behalf of respondent.

## OPINION [1]

LYDON, Senior Judge:

This vaccine case comes before the court on the basis of the Report And Recommendation Of Judgment of a Special Master,

---

1. This opinion may contain information that may not be disclosed to a nonparty. *See* 42 U.S.C. § 300aa–12 (1987). Accordingly, within fourteen (14) days of the date of filing this opinion, the parties shall designate any material subject to § 300aa–12 and such designated ma-terial will be deleted for public access. If on review of this opinion there are no objections filed within the fourteen (14) day period, then it shall be deemed that there is no material subject to § 300aa–12.

filed October 10, 1989, pursuant to § 300aa–12(c)(2)(E) of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1, *et seq.*, as amended, (Supp. V 1987) (Vaccine Act). The Special Master found that the death of Stephen J. Pusateri, II was the result of the administration of a diphtheria, pertussis, tetanus (DPT) inoculation administered on March 7, 1984. Stephen J. Pusateri II, died on March 8, 1984. Suit was brought on behalf of the Estate of Stephen J. Pusateri, II by Stephen J. Pusateri and Deborah L. Pusateri, parents of Stephen J. Pusateri, II, as legal representatives of the Estate. The Report of the Special Master consisted of two parts, a liability finding and recommendation and a damage determination and recommendation.

No objection to the Special Master's Report And Recommendation Of Judgment has been filed, and the time permitted by the Rules (Vaccine Rule 19) to do so has expired. *See* § 300aa–12(d) of the Vaccine Act.

The proposed findings of fact and conclusions of law contained in the Report of the Special Master determining that the Estate of Stephen J. Pusateri, II was eligible for a compensation award under the Vaccine Act, and recommending an award of $250,-000 to the legal representatives of Stephen J. Pusateri, II are hereby adopted by the court as its own. *See* § 300aa–12(d)(2) and § 300aa–15(a)(2). Said findings of fact are fully supported by the record in this case and said conclusions of law are in accord with the mandates of the Vaccine Act and applicable legal principles.

The court, while it adopts the Special Master's findings and determination of $16,903.75 for expenses, does not adopt the Special Master's recommendation relative to the computation of the attorney's fees to be awarded in this case. The point of disagreement with the Special Master is the amount of the reasonable hourly rate to be utilized in computing the attorney's fees to be awarded in this case. All other findings of fact relating to attorney's fees are adopted by the court as its own.

The court agrees with the Special Master that the "lodestar" approach to the computation of attorney's fees is appropriate. Under this approach, the product of reasonable hours expended times a reasonable hourly rate produces a figure that may serve as a basis for an award of reasonable attorney's fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983); *cf. Western Shoshone Identifiable Group v. United States,* 228 Ct.Cl. 26, 39, n. 9, 652 F.2d 41, 47–48, n. 9 (1981). The court adopts the Special Master's finding that eighty-one hours of legal services were rendered in this case. As indicated above, it is the hourly rate utilized by the Special Master that the court is unable to adopt in this case.

It is recognized that the determination of an award of attorney's fees is not an easy task. Such a determination is, of course, an *ad hoc* undertaking. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). *See Hensley, supra,* 461 U.S. at 429, 103 S.Ct. at 1937.

■ What is clear from the legislative history of the Vaccine Act is that Congress did not anticipate that attorney's fees would be large. On the other hand, this history indicates that Congress did not intend that the award of attorney's fees be such as to limit petitioner's ability to obtain qualified assistance in seeking a compensation award for damage. What Congress intended was an adequate or reasonable hourly rate for attorney services, *see* H.R. Rep. No. 908, 99th Cong., 2d Sess., Pt. 1, at 22 (1986), *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 6287, 6344, 6363.

■ The legislative history of the Vaccine Act provides no additional guidance for the court to follow in determining a reasonable attorney's fee. In the 1986 House Report, *supra,* however, Congress found it appropriate to compare a similar compensation program for victims of black lung disease to the Vaccine Program in concluding that, since attorney's fees under the black lung program were significantly lower than in routine civil litigation, the same would likely hold true for the Vaccine

Program.[2] Therefore, the court believes it appropriate to consult, and draw analogies from, other remedial legislation with attorney's fee provisions, such as the Equal Access to Justice Act (EAJA), social security and civil rights legislation. It is also noted that Congress deemed it appropriate to apply the attorney's fee provision of the Social Security Act to black lung cases. *See* 42 U.S.C. § 406(b)(1) (1982); 30 U.S.C. § 923(b) (1982).

The award of attorney's fees in actions brought against the United States is governed by 28 U.S.C. § 2412 (1982) (EAJA). The EAJA provides that attorney's fees "shall be based upon prevailing market rates for the kind and quality of the services furnished except that … attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). In providing for the recovery of attorney's fees in suits against the government, "Congress thought that $75 an hour was generally quite enough public reimbursement for lawyer's fees, whatever the local or national market might be." *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988). Further, the limited exceptions to the $75 rate specified in the EAJA "must be such as are not of broad and general application." *Id.* 108 S.Ct. at 2554.

Although not binding in Vaccine Act cases, one approach to fee determination would be to use the $75 hourly rate in the EAJA as a starting point or lodestar from which to construct a rational method for determining reasonable hourly rates for attorney's fee awards in vaccine cases. It is emphasized that this approach would utilize the $75 hourly rate of the EAJA not as a cap, but as a starting point.[3] Support for this approach can be found by drawing upon Supreme Court and lower federal court decisions analyzing reasonable attorney's fees provisions in a variety of remedial legislation. For example, in construing the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (Supp. V 1981), the Supreme Court observed that Congress believed a reasonable attorney's fee is one that is " 'adequate to attract competent counsel, but … [that does] not produce windfalls to attorneys.' " *Blum, supra,* 465 U.S. at 897, 104 S.Ct. at 1548 (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S. CODE CONG. & ADMIN.NEWS 5908, 5913).

The Sixth Circuit cited the same legislative history two years later in an extensive analysis of the reasonableness of attorney's fees in a civil rights case, *Coulter v. State of Tennessee*, 805 F.2d 146 (6th Cir. 1986). In *Coulter*, the court explained that "reasonable" fees "are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these [civil rights] statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." *Id.* at 149. The Sixth Circuit was likely influenced by a Supreme Court decision issued four months earlier, in which the Supreme Court stated that fee-shifting statutes such as the Clean Air Act "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they

---

**2.** It is interesting to note that in black lung cases, payment of attorney's fees is contingent upon a successful outcome. Accordingly, the likelihood of success is of particular importance. *See Blankenship v. Schweiker*, 676 F.2d 116, 118 (4th Cir.1982). In the Vaccine Act cases, attorney's fees are available regardless of the outcome of the litigation. This fact should forecast still lower fees in Vaccine Act cases.

**3.** Use of the $75 per hour figure as a cap in reasonable attorney's fee determination cases involving public interest work was rejected by the majority opinion in *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1522, n. 8 (D.C.Cir.1988), although favored by three dissenters. Such a cap was not applicable or instructive, the majority opinion stated, since it was not set forth in the statute before the court and Congress knew how to cap a rate when it wished to do so. The majority opinion also noted that no capping intent appears in the Civil Rights Act.

intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986). In *Rohrich v. Bowen*, 796 F.2d 1030, 1032 (8th Cir.1986), a social security disability case, the Circuit Court upheld the District Court's reduction of a claim for a fee hourly rate of $144 to $75.

Whatever else might be said about these cases, they do suggest rather clearly that the hourly rate of $290 sought by plaintiff's counsel, in this case is unreasonably high, given the nature, procedures and presumptions of the Vaccine Act. This view in no way diminishes the fact that counsel is recognized nationally as a leader in the field of vaccine litigation. In support of his $290 hourly rate, counsel references the Lawyer's Almanac 1989 at 116 wherein attorneys' services in Chicago in 1988 ranged from $125 to $325 per hour, varying, of course, "with the nature of the tasks on hand and competitive pressures." (Plaintiff's Memo. at 3). Counsel claims his hourly rate of $290 falls within the above stated parameters and is otherwise reasonable and just.[4] Counsel failed to specify, however, whether the services which command the rates falling within those parameters are similar to the services he provided in this case.

The Special Master concluded that $290 was an unreasonably high hourly rate under the circumstances of this case, but be-lieved a $225 hourly rate would be justified because of counsel's "uncommon skill and expertise in the presentation of the litigation and should not be unduly penalized for his efficiency and effectiveness."[5] The court, however, on review of the record in this case, feels that a $225 hourly rate is still too high given the circumstances of this case.[6]

As indicated earlier, eighty-one hours of services were rendered in this litigation by counsel. While the court accepts the Special Master's conclusion that these hours were satisfactory for computation purposes, the court, on review of this uncomplicated record feels fewer hours may have produced the same result. This figure embraces attorney services of fifty hours rendered in the prosecution of a prior civil action subsequently dismissed, and attorney services of thirty-one hours rendered in the prosecution of the case in this court. The hourly rate of $75, if deemed appropriate, produces a fee of $6,075. There is nothing in this record which would justify an increase in this fee because of any "special factors." *See Pierce, supra*, 108 S.Ct. at 2553–55.

The Special Master in this case did not believe it would be fair to drastically reduce counsel's requested fee of $290 per hour, because he handled the case efficiently and effectively. An attorney's efficiency and effectiveness in handling the litigation are, in effect, among the elements adopted as part of a twelve-factor approach by the Fifth Circuit in *Johnson v. Georgia High-*

---

**4.** In further support of his $290 hourly rate, counsel submitted an affidavit from a prominent member of the Illinois Bar who offered the opinion that the $290 hourly rate claimed in this case was reasonable. The Special Master found the affidavit most unpersuasive and the court agrees with the Special Master's view in this regard. "[G]eneralized and conclusory 'information and belief' affidavits from friendly attorneys presenting a wide range of hourly rates will not suffice.... Nor is it helpful if the affiant simply states that he is familiar with the attorney and the litigation and that he thinks the fee request is reasonable." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325–26 (D.C.Cir.1982).

**5.** Supportive of this assessment, the Special Master notes that "court-ordered briefs on sub-missions were kept [by counsel] to a bare minimum, [and] counsel relied upon the testimony of only two witnesses, and the hearing lasted less than one-half day." In fact, the hearing lasted two and one-half hours.

**6.** It is noted that the Vaccine Act permits the award of attorney's fees and costs whether or not petitioners prevail on the merits. Too, the Vaccine Act requires a reduced standard of proof, bordering almost on no-fault. Finally, this case was not unduly complex in terms of facts or law, a fact confirmed by the minimum briefing required and the shortness of the hearing in this case. Indeed, the hearing was non-adversarial since respondent had withdrawn from the case prior to the hearing.

*way Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). However, the *Johnson* approach has since been criticized by the Supreme Court. For example, in *Pennsylvania v. Delaware Valley,* the Supreme Court noted that when an attorney accepts a case, he becomes "obligated to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors ... in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on post-engagement performance." *Pennsylvania v. Delaware Valley, supra,* 478 U.S. at 565–66, 106 S.Ct. at 3098–99. Furthermore, in *Blum,* the court emphasized that "[n]either complexity nor novelty of the issues ... is an appropriate factor in determining whether to increase the basic fee award." *Blum, supra,* 465 U.S. at 898–99, 104 S.Ct. at 1548–49. *But see Blanchard v. Bergeron,* —— U.S. ——, 109 S.Ct. 939, 946–47, 103 L.Ed.2d 67 (1989), (Scalia, J., concurring) (criticizing majority's opinion for relying on *Johnson's* twelve-factor analysis).

The court notes with interest Justice Scalia's criticism of *Blanchard's* reliance on the twelve *Johnson* factors. Rigid adherence to, and a strict reading of cases such as *Johnson* and *Hensley* are not persuasive in determining a reasonable hourly rate since such cases were written in the context of determining reasonable hourly rates for attorney's fee awards to prevailing parties. Here, attorney's fees are available regardless of whether the claimant is successful. This is a distinction that should not be ignored.

 In the opinion of the court, the flaw in the Special Master's fee determination was acceptance of counsel's fee request of $290 per hour as the starting point. This, in substance, puts the burden on the Special Master to work this fee down to a reasonable rate. However, the burden should be on counsel in these cases to establish a reasonable rate. This is best accomplished by the establishment of a lodestar rate and a requirement that counsel justify a higher rate. In the case at bar, the $75 per hour figure, approved by the Supreme Court in *Pierce, supra,* relative to suits against the Federal Government, offers a fair and reasonable starting point in any fee determination in a vaccine case. On the other hand, utilizing the approach set forth in *Coulter, supra,* and accepting petitioners' reliance on the Lawyer's Almanac 1989 range of fees for Chicago in 1988 from $125 to $325 per hour, the hourly rate would be the lower rate quoted, *i.e.,* $125 per hour. There may well be other approaches to establishment of a lodestar rate depending on the circumstances of each case. Whatever lodestar rate is used, it is counsel's burden to demonstrate entitlement to a higher rate.

As the Supreme Court emphasized in *Blum,* "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum, supra,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. Moreover, in *Martin v. United States,* the Claims Court noted that, "[w]here supporting documentation [concerning hours worked at rates claimed] is inadequate, the award may be reduced accordingly." *Martin v. United States,* 12 Cl.Ct. 223, 227 (1987) (citing *Hensley, supra,* 461 U.S. at 433, 103 S.Ct. at 1939).

In the instant case, the facts were neither novel nor complex, although *Blum, supra,* felt these were not appropriate factors to consider. Indeed, the facts fell within the liability presumption of the Vaccine Act. There was no necessity to prove negligence. Difficulties of proof were non-existent. Establishing liability on the facts of this case required an ordinary level of skill and competence. Indeed, the withdrawal of the Government from the proceedings resulted in a non-adversarial hearing. The result achieved in this case was almost foreordained by the facts. Finally, a successful outcome was not a necessary predicate for recovery of attorney's fees. Under these circumstances, the lodestar

rate is considered reasonable in this case.[7] No information was provided by counsel as to the customary fee charged for like work. Presumably such information was not provided because like work was generally performed under contingency fee arrangements where payment is received only if the client is a prevailing party. As indicated previously, even if a petitioner is not the prevailing party, attorney fee recovery is available in Vaccine Act cases. The difficulty in this case is to determine which lodestar rate approach to use, $75 per hour or $125 per hour. In enacting the Vaccine Act, Congress wanted to ensure that petitioners with vaccine-related injuries would be able to obtain qualified assistance in their localities by way of attorney representation in seeking damage awards for such injuries. On the other hand, Congress did intend that attorney's fees would be less than in other routine civil litigation. Given the national reach of Vaccine Act cases, a uniform starting lodestar rate of $75 per hour seems reasonable. The lodestar rate is not a cap but a starting point. The rate can be raised depending on the establishment of factors, unique to the case, the locality or other circumstances. The court feels that the lodestar rate of $75 per hour will attract competent and experienced attorneys to represent claimants with vaccine-related injuries in most, if not all, of the localities in this country. The court does not feel that $75 per hour is inadequate or unreasonable in the context of the record in this case as it relates to the establishment of liability and to the establishment of a reasonable hourly rate for services rendered. It bears emphasizing

again that the $75 rate is *not* a cap but is a starting point.

This is not to say that the use of a range of prevailing rates in a locality might not, in some cases, serve as a basis for arriving at a lodestar rate. In this case petitioners advanced such a range of rates for the Chicago area, *i.e.*, from $125 to $325 per hour. As the *Coulter* case, *supra*, points out, in such instances, the lower of the range of rates should be used. This court agrees. The $125 low rate of the Lawyer's Almanac, applicable to the Chicago area, is not accepted herein because there is no explanation as to what it represents.[8] Is it a rate directed at a composite of litigation disciplines, complex cases or what? This absence of evidence as to the relevancy of the $125 rate, which ostensibly applies to cases where success determines whether a fee is awarded or not, is of some significance in the Vaccine Act cases where the award of attorney's fees does not depend on a successful outcome and problems of proof are greatly diminished. Finally, the court feels that adequate and competent attorney representation for vaccine claimants is available in the Chicago area at the $75 per hour rate.

The court concludes that attorney's fees of $6,075 reflects a reasonable award for services under the circumstances of this Vaccine Act case. Reasonable in this context contemplates reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney. This amount, when added to the expenses awarded herein ($16,903.75), totals $22,978.75. This sum represents the award due petitioners for attorney's fees and costs.[9]

7. The Special Master noted that it would have been helpful if counsel had provided information on his own rates. Such information would have enabled one to compare his claimed hourly rate with rates charged others under similar circumstances. Too, the Special Master observed that it would have been helpful if a statement was provided as to the range of rates prevailing in the community among lawyers of similar experience and expertise in this or comparable fields of practice.

8. Many competent and experienced lawyers from the Chicago area practice in this court. Some of their cases are most complex and diffi-

cult. If they are successful in the litigation before this court, they are entitled to a fee award based on $75 per hour, unless the Government succeeds in establishing that its defense to the claim was "substantially justified," in which case the attorney gets no fee award as part of the judgment.

9. This sum is below the statutory cap of $30,000 placed on the award of attorney's fees, costs, pain and suffering and for lost wages in vaccine cases in which the vaccine was administered prior to the effective date of the Vaccine Act, as is the situation in the instant case. *See* § 300aa–15(b). *See Shaw v. Secretary of the*

For reasons set forth above, petitioners, in their capacity as legal representatives of the Estate of Stephen J. Pusateri, II, are awarded $250,000. In addition, petitioners are awarded $22,978.75 in attorney's fees and expenses. No other costs are to be awarded. The clerk is directed to enter judgment of $272,978.75 for petitioners in their capacity as legal representatives of the Estate of Stephen J. Pusateri, II. No costs.

*Dep't of Health and Human Servs.*, 18 Cl.Ct. 646 (Cl.Ct.1989); *Mikulich v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 253 (1989). Because of Stephen Pusateri, II's death, which occurred on March 8, 1984—the day after administration of the DPT vaccination, pain and suffering and lost wages are not relevant damage factors in this case.