FIRST COMMERCIAL BANK, Guardian
of the Estate of Kari Janeen
McLean, a Minor, Petitioner,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.

No. 89–14V.

United States Claims Court.

Dec. 11, 1989.

Sydney S. McMath, Little Rock, Ark., for petitioner.

Gemma Flamberg, Rockville, Md., for respondent.

## OPINION [1]

LYDON, Senior Judge:

This vaccine case comes before the court on the objections of respondent Secretary of the Department of Health and Human Services (HHS) to the Report of the Special Master. The Report of the Special Master was filed on October 30, 1989, pursuant to section 300aa–12(c)(2)(E) of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 *et seq., as amended,* (Supp. V 1987) (Vaccine Act). The Special Master found that petitioner, First Commercial Bank, as guardian of the Estate of Kari Janeen McLean (Kari), a minor, was entitled to compensation for the injuries suffered by Kari which were caused by the administration of a diphtheria, pertussis and tetanus (DPT) vaccine.

Respondent filed its objections to the Report on November 17, 1989. Respondent does not object to the Special Master's finding that petitioner is entitled to compensation for Kari's injuries, but rather its objections are confined to two elements of the compensation award. First, respondent contends that the Special Master failed to offset compensation by payments reasonably anticipated under a state medical benefits program. Second, respondent objects to the Special Master's failure to impose a $30,000 limit on the amount of compensation awarded for attorney's fees and costs, lost wages, and pain and suffering.

## I

In his Report, the Special Master found that petitioner has proven under the standards of section 300aa–13(a) of the Vaccine Act all essential elements of its petition, and he therefore recommends that compensation be awarded under section 300aa–15 of the Act. The Special Master's Report consists of two parts, a liability determination and recommendation, and a damages determination and recommendation.

## A

As to the liability issue, the Special Master found that Kari McLean was a healthy baby prior to the administration of her third DPT shot on August 23, 1975. Within hours of receiving the shot, Kari became ill and suffered a seizure. Subsequently, Kari experienced additional seizures and was diagnosed as suffering from a seizure disorder. A medical expert determined that Kari suffered a post-pertussis immunization encephalopathy. Kari will continue to suffer the effects of this vaccine-related disorder throughout her life.

As guardian of the Estate of Kari McLean, petitioner First Commercial Bank filed a petition for vaccine compensation on February 15, 1989. Although respondent's attorney entered an appearance, said attorney did not file an answer to the petition. After respondent's attorney filed a Notice of Withdrawal on May 26, 1989, respondent was not represented by counsel in this matter. No hearing was requested by either party, and none was held.

Subsequent to the filing of the Special Master's Report, on November 17, 1989 an attorney from HHS entered an appearance on behalf of respondent, and on that same date filed objections to the Special Master's Report. Petitioner has not filed an objection to the Special Master's Report, nor has petitioner filed a reply to respondent's objections.

The court hereby adopts as its own the Special Master's proposed findings of fact and conclusions of law determining that petitioner is entitled to compensation under the Vaccine Act for the injuries suffered by Kari McLean. The findings of the Special Master are supported by the record in this

1. This opinion may contain information that may not be disclosed to a nonparty. *See* 42 U.S.C. § 300aa–12 (1987). Accordingly, within 14 days of the date of filing this opinion, the parties shall designate any material subject to

§ 300aa–12 and such designated material will be deleted for public access. If on review of this opinion there are no objections filed within the 14 day period, then it shall be deemed that there is no material subject to § 300aa–12.

case and the findings and conclusions on liability are in full compliance with the requirements of the Vaccine Act. Respondent does not object to this portion of the Special Master's Report.

B

With regard to the issue of damages, the Special Master concluded from the evidence presented that petitioner is entitled to a total compensation award of $2,629,257.80. This total embraces the following components: $2,055,759 for the unreimbursable cost of future medical and related expenses under section 300aa–15(a)(1)(A); $274,553 for future lost earnings under section 300aa–15(a)(3)(A); $100,000 for actual and projected pain and suffering and emotional distress under section 300aa–15(a)(4); and $198,945.84 for attorney's fees ($133,-738.50) and other litigation costs ($65,-207.34) under section 300aa–15(e).

The court hereby adopts the Special Master's findings that petitioner has met the statutory requirements of the Vaccine Act in demonstrating entitlement to $2,055,759 for Kari's future unreimbursable medical and related expenses. Respondent does not challenge the Special Master's Report in this regard, but it does challenge the Special Master's failure to offset this award by reasonably anticipated payments under a state medical benefits program, as required by section 300aa–15(g).[2] Respondent contends that although the Special Master considered Kari's present ineligibility for social security, welfare or Medicare benefits, he failed to consider her potential eligibility as an adult. Although respondent asserts that Kari will likely be eligible for Medicaid assistance in the future, it fails to provide any support for this assertion.

In considering the issue of alternative compensation under section 300aa–15(g), the Special Master correctly observed that this section mandates that compensation not be paid under the Vaccine Act for items or services to the extent that payment can reasonably be expected from private insurance or a state compensation program. In concluding that such payment could not reasonably be expected, the Special Master relied on the deposition testimony of Kari's mother, Mrs. McLean, who stated that Kari is not eligible for social security income, welfare benefits, or Medicare coverage, and that Kari has received no compensation from any source for her injuries. The Special Master further found that "the Record contains no other evidence concerning insurance or government programs which would mitigate the need for compensation under the Vaccine Act."

As the Special Master noted in his Report, respondent should be "a valuable source of information" on this matter, since it has the responsibility to preserve the funds of the Vaccine Compensation Program, as well as the means of finding alternative sources to finance medical expenses. Since respondent withdrew from these proceedings, its lack of participation effectively rendered petitioner's evidence the sole component of the record, and this record is the only means by which the court can make factual findings. Based on the evidence presented by petitioner, the Special Master concluded that no payment could reasonably be expected from private insurance or a state compensation program, and there was no other evidence to support a finding in favor of offsetting the compensation award. Respondent could have participated in the proceedings, and in so doing it could have challenged petitioner's evidence and presented evidence to support the position it now asserts in objecting to the Special Master's Report.

■ The rule of law has been articulated by many courts of appeal, as well as by the Supreme Court, that an issue not raised at the trial level generally will not be con-

2. Section 300aa–15(g) reads as follows:
   Payment of compensation under the Program shall not be made for any item or service to the extent that payment has been made, or can reasonably be expected to be made, with respect to such item or service (1) under any State compensation program, under an insurance policy, or under any Federal or State health benefits program, or (2) by an entity which provides health services on a prepaid basis.

sidered at the appellate level. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). *See also Cecil v. Department of Transp., FAA,* 767 F.2d 892, 894 (Fed.Cir.1985); *Synan v. Merit Sys. Protection Bd.,* 765 F.2d 1099, 1102 (Fed. Cir.1985); *Lizut v. Department of the Army,* 717 F.2d 1391, 1396 (Fed.Cir.1983). Although the Claims Court is not an appellate court, it functions in much the same manner when reviewing the factual findings and legal conclusions of a Special Master in Vaccine Act proceedings. The Claims Court, however, is empowered by the Act to make a de novo determination of any matter in a vaccine petition, unlike an appellate court, which must generally apply a more limited standard of review. The Claims Court is not, however, required to engage in a de novo review.

■ In the case at bar the court feels it is unnecessary to undertake a de novo approach concerning alternative means of compensation under section 300aa–15(g). In light of the Special Master's conclusion that petitioner's evidence supports a finding that Kari is not eligible for other compensation sources, whether through private insurance or a state health benefits program, the court finds that respondent has made no showing that payments under a state medical benefits program "can reasonably be expected to be made" and therefore respondent has no basis for contending that the Special Master erred in failing to offset the compensation award. Therefore the court adopts the Special Master's recommendation that petitioner be awarded $2,055,759 for Kari's unreimbursable medical and related expenses.[3]

■ The court does not adopt *in toto,* however, the findings of the Special Master relative to the three remaining elements of compensation: lost wages, pain and suffering, and attorney's fees and costs. Specifically, the court finds two points at which its views differ from those of the Special Master. First, the court disagrees with the Special Master's conclusion that $125 per hour is a reasonable hourly rate in this case at which to compensate petitioner's attorneys. Second, the court disagrees with the Special Master's conclusion that the $30,000 limitation on compensation imposed by section 300aa–15(b) of the Vaccine Act applies only to the attorney's fees element of compensation, and not to the sum total of compensation awarded for lost wages, pain and suffering, and attorney's fees and costs.

Section 300aa–15(e) of the Vaccine Act requires the court to include in the compensation award an amount to cover "reasonable" attorney's fees and other legal costs incurred in bringing the vaccine petition. In addition, this section gives the court discretion to include an amount to cover reasonable attorney's fees and costs incurred in bringing a prior civil action.

Petitioner's counsel filed a Petition for Attorneys' Fees and Costs in which an itemization of litigation costs was included, but not segregated into costs associated with the prior civil action and those associated with the present petition. The total amount claimed for litigation costs in both actions is $65,207.34. Petitioner's counsel also submitted fifty-six pages of detailed time records for both actions, but the time records for the prior civil action admittedly reflect counsels' "best reconstruction" of the time spent. Counsel also submitted the affidavit of a fellow Arkansas attorney, who stated that he is familiar with petitioner's counsel, and that the hourly rates of

3. If Kari does qualify for benefits from a state compensation program in the future, petitioner would be obligated to reimburse the Vaccine Program for any payments it receives under such program(s) on Kari's behalf. This obligation is clearly reflected in section 300aa–17(a), which states that the Vaccine Program "shall be subrogated to all rights of the petitioners with respect to the vaccine-related injury ...

for which compensation was paid." In order to enforce this subrogation provision, the Vaccine Act's legislative history suggests that the "court may refer the record of a compensation proceeding to the Secretary [of HHS] and to the Attorney General with recommendations as to subrogation." H.R.Rep. No. 908, 99th Cong., 2d Sess., pt. 1, at 23, *reprinted in* 1986 U.S. CODE CONG. & ADMIN. NEWS 6287, 6344, 6364.

$125 for a partner and $60 for an associate are "competitive" rates in the central Arkansas area. Even though their petition for attorney's fees identified, inter alia, "the fee customarily charged in the locality for similar legal services" as one of the factors courts regularly consider in determining a reasonable fee award, counsel made no further attempt to justify their claimed rate of $125 per hour as reasonable.

Petitioner's counsel claimed that they spent a total of 943.35 hours in bringing the prior civil action. At $125 per hour, this amounts to $117,918.75 in attorney's fees for the prior civil action. With regard to the present vaccine petition, counsel claimed that two partners spent 85.35 hours, and one associate spent 85.85 hours. At the requested rates of $125 and $60 per hour for a partner and an associate respectively, this amounts to $15,819.75 for the vaccine petition. The grand total for attorney's fees claimed in both actions is $133,-738.50.

The Special Master found the hourly rates of $125 and $60 for a partner and an associate respectively to be reasonable, and he found the number of hours spent on both actions to be reasonable as well. The court does not take issue with the Special Master's conclusion that the hourly rate of $60 for an associate is reasonable. The court does take issue, however, with his conclusion that the hourly rate of $125 is a reasonable rate of compensation for a partner's time in this case. The sole support for counsel's assertion that $125 is a reasonable hourly rate consists of the affidavit from a fellow Arkansas attorney. The court does not find this affidavit sufficient to support counsel's contention that the claimed rate is reasonable in this case. Rather, the court believes that such "generalized and conclusory 'information and belief' affidavits from friendly attorneys ... will not suffice.... Nor is it helpful if the affiant simply states that he is familiar with the attorney and the litigation and that he thinks the fee request is reasonable." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325–26 (D.C.Cir.1982).

Although the Special Master found that counsels' claimed hourly rate "is well within the range of rates claimed in similar matters," he provides no further explanation for this conclusion, and it is apparently based on the affidavit of the fellow Arkansas attorney, which the court has deemed to be of limited utility in determining a reasonable hourly rate. Furthermore, the Special Master found that the rate claimed by counsel reflects the risk involved in contingent fee cases. While this may be true relative to the contingent fee arrangement in the prior civil action, it is not true relative to the present vaccine petition. The court has noted in previous vaccine cases that litigation under the Vaccine Act does not involve the risk that attorneys may not be compensated for their services, since the Act allows the court to compensate even unsuccessful petitioners for attorney's fees and costs. Furthermore, petitions brought under the Vaccine Act generally do not involve the complex issues of causation, negligence and product defectiveness that may complicate ordinary civil tort litigation. Such factors should not be ignored when addressing a request for attorney's fees under the Vaccine Act.

Given these circumstances, the court finds that $75 is a reasonable hourly rate at which to compensate petitioner's counsel for the legal services of a partner in this case. As the court has recently held, $75 per hour is a reasonable lodestar or starting point for the determination of a reasonable hourly rate at which to compensate attorneys under the Vaccine Act. *See Pusateri v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 828, 832–33 (1989); *Brown v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 834, 844–45 (1989). The $75 hourly rate received the imprimatur of the Supreme Court in a case involving the Equal Access to Justice Act (EAJA), *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988) ("Congress thought that $75 an hour was generally quite enough public reimbursement for lawyer's fees, whatever the local or national market might be."). Furthermore, the Ninth Cir-

cuit recently held that it is appropriate to apply by analogy certain provisions of the EAJA dealing with attorney's fees and costs to naturalization proceedings. *Abela v. Gustafson*, 888 F.2d 1258 (9th Cir.1989). Thus, the court feels it is appropriate to apply by analogy the EAJA's $75 hourly rate to Vaccine Act cases, and the court considers this figure to be a fair and reasonable starting point or lodestar rate in determining reasonable attorney's fees in this case.

In addition, it must be emphasized that the attorney seeking compensation for his services bears the burden of proof on the reasonableness of his claimed hourly rate. The court finds that in this case petitioner's counsel have not met their burden of proving that they are entitled to attorney's fees based on a $125 hourly rate. The Supreme Court has clearly stated that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). As stated above, petitioner's counsel produced only one affidavit, from a fellow attorney, to support the reasonableness of the $125 hourly rate, and the court finds such an affidavit of limited use and insufficiently persuasive, without more, for the court to conclude that the rate claimed is reasonable. Therefore, due to counsels' failure to meet their burden of proving that $125 is a reasonable hourly rate, the court feels that $75 per hour is adequate compensation for the legal services of a partner in this case.[4] The court

does not take issue with counsels' requested hourly rate of $60 to compensate an associate for time spent on this case.

The court adopts the Special Master's finding that 171.10 hours is a reasonable amount of time spent by counsel in bringing this vaccine petition. This figure is divided into 85.35 hours of partners' time and 85.85 hours of an associate's time. When the number of hours reasonably spent is multiplied by the reasonable hourly rate(s), the resulting figure produces a reasonable attorney's fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). Application of this lodestar method produces a total attorney's fee award of $11,552.25 for legal services rendered in connection with this vaccine petition.

■ The second point at which the court's views diverge from those of the Special Master is the $30,000 limit on compensation awarded to petitioners whose injuries are caused by vaccines administered prior to the effective date of the Vaccine Act (pre-Act cases). This $30,000 cap is found in section 300aa–15(b) of the Act. In his Report, the Special Master concluded that, in this pre-Act case, the $30,000 cap applies only to that portion of attorney's fees incurred in proving petitioner's entitlement to compensation for lost wages and pain and suffering. Respondent also disputes this interpretation of the $30,000 cap in its objections to the Special Master's Report.

The Claims Court has held in several recent Vaccine Act cases that the $30,000 limit on compensation in pre-Act cases in section 300aa–15(b) applies to the combined total of the following three elements of

---

4. The Supreme Court has stated that a "reasonable" attorney's fee is one that is " 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.' " *Blum, supra*, 465 U.S. at 897, 104 S.Ct. at 1548 (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S. CODE CONG. & ADMIN. NEWS 5908, 5913).

The Sixth Circuit further illustrated this point by explaining that "reasonable" fees "are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under [civil rights] statutes a re-

nowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). Although both *Blum* and *Coulter* involved civil rights statutes, nevertheless the court feels that a useful analogy may be drawn from these cases and applied in the context of Vaccine Act proceedings.

compensation: lost wages, pain and suffering, and attorney's fees and costs. *See Hanagan v. Secretary of the Dep't of Health and Human Servs.*, 19 Cl.Ct. 7 (1989); *Shaw v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 646 (1989); *Matthews v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 514 (1989); *Bazan v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 309 (1989); *Mikulich v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 253 (1989). *But see Brown v. Secretary of the Dep't of Health and Human Servs.*, 18 Cl.Ct. 834 (1989) ($30,000 cap applies only to portion of attorney's fees incurred in proving lost wages and pain and suffering).

The court agrees with the majority view that the $30,000 cap applies to all three elements of compensation: lost wages, pain and suffering, and attorney's fees and costs. Since this is a pre-Act case, the court must apply the cap, and in so doing, the court must give consideration to the proper apportionment of the maximum $30,000 award among these three elements. The legislative history of the Vaccine Act indicates that Congress intended the court to use its discretion in making such allocations as it sees fit. *See* H.R.Rep. No. 391, 100th Cong., 1st Sess. 698 (1987). The legislative history also indicates Congress' concern about large awards in these particular areas of litigation.

■ The court has already determined that petitioner's counsel are entitled to $11,552.25 for legal services rendered in this vaccine case. Petitioner's counsel also claimed $117,918.75 for legal services rendered in the prior civil action. In light of the $30,000 cap, which the court believes applies to all attorney's fees awarded under the Vaccine Act, regardless of whether they were incurred in bringing a prior civil action or in bringing a vaccine petition, the court chooses not to make an award for attorney's fees incurred in the prior civil action. The Vaccine Act gives the court discretion to decide whether or not to make such an award pursuant to section 300aa–15(e)(2).[5]

Petitioner's counsel also claimed total legal costs of $65,207.34 incurred in both the prior civil action and the present petition. Counsel supported this claim with an itemized list of costs expended sufficient to support the Special Master's finding that these costs were reasonable. The court does not question the reasonableness of these costs, but when added to the attorney's fee award of $11,552.25, the total far exceeds the $30,000 statutory cap and leaves no room for compensation for lost wages or pain and suffering.

■ In determining the proper method for allocating the $30,000 award among lost wages, pain and suffering, and attorney's fees and costs, the court reached the following conclusion. In light of Congressional concern that the Vaccine Act's limitation on the collection of attorney's fees[6] might operate to shrink the pool of qualified attorneys who are willing to represent petitioners in Vaccine Act litigation, it is clear from the legislative history that Congress "intends that the court make adequate provision for attorneys' time" in setting attorney's fee awards. H.R.Rep. No. 908, 99th Cong., 2d Sess., pt. 1, at 22, *reprinted in* 1986 U.S. CODE CONG. & ADMIN. NEWS 6363. Based on this consideration, the court feels it is appropriate to give priority to compensation for attorney's fees and other legal costs in allocating compensation awards in pre-Act cases subject to the $30,000 cap.

Accordingly, the court allocates $11,-552.25 to attorney's fees incurred in bringing the vaccine petition, and allocates the

---

5. It should be noted that section 300aa–15(e)(3) of the Vaccine Act prohibits attorneys from collecting any additional fees for services rendered in connection with the vaccine petition, other than those awarded in the court's judgment on the petition. The Act is silent with regard to the collection of attorney's fees in connection with a prior civil action, and it is also silent with regard to the collection of other litigation costs in connection with either a prior civil action or a vaccine petition.

6. *See supra* note 5.

remaining $18,447.75 to other legal costs,[7] for a total award of $30,000. Although this allocation eliminates any award of compensation for lost wages or pain and suffering, for which the Special Master found petitioner was entitled in the amounts of $274,553 and $100,000 respectively, as stated above, the court feels that the above allocation is not only reasonable but ostensibly comports with Congressional intent.

## CONCLUSION

For the reasons set forth above, petitioner, as guardian of the Estate of Kari Janeen McLean, is entitled to an award of $2,055,759.[8] In addition, petitioner is awarded $30,000 in attorney's fees and other legal costs. No other costs are to be awarded. The clerk is directed to enter judgment of $2,085,759 for petitioner in its representative capacity as guardian of the Estate of Kari Janeen McLean.[9]

---

7. In their affidavit, petitioner's counsel claim that they have incurred $65,207.34 in "costs and out-of-pocket expenses." It is difficult to determine from this statement whether counsel advanced these costs to petitioner during the course of litigation or whether petitioner paid them as they were incurred. It may be inferred from the terms of the contingent fee contract entered into among Kari's parents, petitioner and petitioner's counsel in connection with the prior civil action that costs and expenses were advanced by counsel's law firm for the present proceeding as they were in the prior civil action. The contract provides that the client will reimburse the law firm for said costs and expenses out of any recovery after the deduction of attorneys' fees.

8. It should be noted that this figure represents an estimate of the funds needed to purchase an annuity in four equal annual installments to finance Kari's health care plan, as calculated by petitioner's expert witness, an insurance underwriter. The underwriter explained, by affidavit, that this figure is based on quotes from A+ rated life annuity companies, and represents a current competitive rate as of August 18, 1989, the date of his affidavit. Of course this figure may be subject to change as it is affected by future fluctuating interest rates.

9. The Vaccine Act presently provides, in section 300aa–15(f)(4)(B), that in pre-Act cases, such as this one, payment of compensation to a petitioner shall be made in four equal annual installments. As guardian of the Estate of Kari Janeen McLean, a minor, it is expected that petitioner, First Commercial Bank, will establish appropriate procedures to safeguard the best interests of its ward. In this regard, it might consider the establishment of a reversionary medical care trust or some other appropriate administrative device which would be in the best interest of Kari Janeen McLean, a minor.