Melissa HINES, on behalf of her minor daughter, Amber SEVIER, Petitioner,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 89–90V.

United States Claims Court.

April 2, 1991.

Berry James Walker, Jr., Maitland, Fla., for petitioner.

David L. Terzian, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

## ORDER [1]

### MOODY R. TIDWELL, III, Judge.

Under the National Childhood Vaccine Injury Act of 1986, *codified as amended* 42 U.S.C. §§ 300aa–1 to 300aa–33 (West Supp. 1990) (Act), this matter comes before the court on petitioner's motion for review of Special Master Paul T. Baird's January 9, 1991 Order Awarding Attorneys' Fees and Other Costs.

**1.** This order may contain information that should not be disclosed to a nonparty. *See* 42 U.S.C. § 300aa–12 (1987). Accordingly, within fourteen days of the date of this order, the parties shall designate any material subject to section 300aa–12, and such designated material will be deleted for public access. If on review of this order neither party files objections with-

## FACTS

Petitioner sought compensation under the Act for injuries to her minor daughter, Amber Sevier, allegedly resulting from a measles, mumps, and rubella inoculation administered on January 26, 1989. On June 22, 1990, Special Master Baird determined that petitioner was not entitled to compensation under the Act. On July 22, 1990, petitioner filed a motion for review of the Special Master's decision which United States Claims Court Senior Judge Lydon denied on October 15, 1990, after hearing oral argument. On December 4, 1990, petitioner filed a renewed motion for award of attorney's fees and other costs. On January 9, 1991, Special Master Baird granted petitioner's motion in part, reducing certain aspects of petitioner's claim, to which petitioner objects.[2] Specifically, Special Master Baird:

1. Reduced petitioner's claim for M. Susan Sacco, Esq. Petitioner requested 45.5 hours of time at $110/hour, and 76.8 hours of time at $125/hour. Special Master Baird found the $125/hour rate excessive, and that some of Ms. Sacco's hours were duplicative. He therefore allowed 92.3 hours of time at $110/hour;

2. Reduced petitioner's claim for Berry James Walker, Jr., Esq. Petitioner sought 200.6 hours for Mr. Walker at a rate of $150/hour. Special Master Baird allowed 130 hours of time at $110/hour;

3. Reduced the amount claimed from $80/hour to $25/hour for 10.8 hours of work performed by Patricia Chamberlin, a law student employed by Broad & Cassel, the firm representing petitioner;

4. Reduced the amount of hours petitioner claimed for work performed by paralegal Ellen Jean Garside from 92.5 hours to 50 hours, and reduced the billing rate from $65/hour to $45/hour;

in the fourteen-day period, the court will assume that there is no material subject to section 300aa–12.

**2.** Special Master Baird made certain other reductions to which petitioner apparently does not object.

5. Reduced the amount petitioner claimed for .8 hours of work performed by paralegal Sharon J. Burns from $65/hour to $30/hour;

6. Disallowed entirely the 1.2 hours at $65/hour petitioner claimed for work performed by paralegal Pam St. Andrews;

7. Disallowed $806 for travel expenses to Washington, D.C., for Mr. Walker;

8. Disallowed $2,500 out of $3,000 in expert witness fees paid to the accounting firm of Flick and Rogers for preparing a present day valuation of Amber Sevier's future earning capacity; and

9. Disallowed the entire $1,112 petitioner claimed for Westlaw legal research which included not only the actual cost of the service, but also a $4.50/minute surcharge imposed by petitioner's law firm. Additionally, the special master found that some of the Westlaw time was for issues unrelated to the proceeding under the Act.

## DISCUSSION

■ Under 42 U.S.C. § 300aa–15(e)(1), a special master may award reasonable attorneys' fees and other costs, even if the judgment does not award compensation, if the special master determines that petitioner brought the claim in good faith and with a reasonable basis. The appropriate standard of review for that determination appears in the statute, and grants this court the authority to "set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C.A. § 300aa–12(e)(2)(B). However, a reviewing court may not substitute its own judgment for that of the special master if the special master has considered all relevant factors, and has made no clear error of judgment. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Gamalski v. Secretary of the Dep't of Health & Human Servs.,* 21 Cl.Ct. 450, 451–52 (1990); *Hyundai Electronics Indus. v. United States Int'l Trade Comm'n,* 899 F.2d 1204, 1209 (Fed.Cir.1990). Accordingly, the re-

viewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.

## I. Attorneys' Fees

■ After careful review of Special Master Baird's order, and applicable case law, the court cannot say that the special master's determination of attorneys' fees was arbitrary, capricious, or an abuse of discretion. Petitioner calculated the amount she claims for attorneys' fees using the "lodestar" method, which the court long has endorsed, by which petitioner's attorneys multiply a reasonable number of hours by a reasonable hourly fee. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Because the lodestar approach was designed to yield "a market-based value and therefore is presumed to be reasonable, it is, nevertheless, an initial estimate only—one which a court may adjust 'where the fee charged is out of line with the nature of the services rendered.'" *Zeagler v. Secretary of the Dep't of Health & Human Servs.,* 19 Cl.Ct. 151, 153 (1989) (citing *Pierce v. Underwood,* 487 U.S. 552, 581, 108 S.Ct. 2541, 2558, 101 L.Ed.2d 490 (1988) (Brennan, J., concurring)).

Though the Act offers little guidance on what constitutes a "reasonable fee," the court is persuaded by Senior Judge Lydon's insightful analysis of the Act's legislative history. *See Pusateri v. Secretary of the Dep't of Health & Human Servs.,* 18 Cl.Ct. 828, 829–30 (1989). In *Pusateri,* Senior Judge Lydon correctly observed that Congress did not intend large legal fees in vaccine cases. 18 Cl.Ct. at 829. Because Congress compared the Vaccine Act to a similar compensation program for black lung victims, noting that attorneys' fees under that program were significantly lower than in routine civil litigation, Judge Lydon reasoned that it would be appropriate "to consult, and draw analogies from, other remedial legislation with attorneys' fees provisions." *Id.* at 829–30. He then turned to the Equal Access to Justice Act, 28 U.S.C. § 2412 (West 1982) (EAJA), in order to establish a reference point for the term "reasonable."

The EAJA limits reasonable attorneys' fees to $75/hour "unless the court determines that ... a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). While the EAJA is not binding on the Vaccine Act, Senior Judge Lydon found $75/hour a reasonable starting point for constructing a lodestar for attorneys' fees in vaccine cases. *Pusateri*, 18 Cl.Ct. at 830. Judge Lydon held that $75/hour would represent a starting point, not a cap, because the Vaccine Act specifically lacks a statutory cap, and Congress knows how to cap a rate when it wishes to do so. *Id.* at 830 n. 3. He also noted that "reasonable," while intended to attract competent representation, should "not produce a windfall to attorneys." *Id.* at 830 (citing *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Neither were fee shifting statutes "designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Id.* at 830–31 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)).

With this in mind, the court agrees with Special Master Baird that petitioner's attorneys are unreasonable in asking for hourly rates higher than those they normally charge.[3] Congress drafted the Act to compensate for the disturbing hardships suffered by those unfavorably affected by vaccine inoculations, not to pad the pockets of their lawyers. The court supports an award of fees as a means of ensuring competent representation, but does not believe that the only way to achieve this goal is to pay attorneys and support staff *more* than their usual hourly billing rates. The Act did not establish a bottomless cash source for an unlimited pool of petitioners. The court thinks it near unconscionable for an attorney to attempt to drain the Trust Fund allotted to pay vaccine claims by demanding inflated fees.

The court further notes that it finds somewhat disingenuous petitioner's challenge to the special master's attorneys' fee determination when it falls squarely within the rates deemed reasonable by petitioner's own affiant. If petitioner does not believe $110/hour is a reasonable rate, she should not have submitted testimony to that effect. Although petitioner also submitted another affidavit suggesting $150/hour as reasonable, petitioner will not be heard to complain simply because the special master declined to choose the figure representing the high end of the scale.

■ Petitioner additionally objects to what she believes to be the special master's disregard of the two affidavits petitioner submitted attesting to the reasonable attorneys' fees in the relevant community, which the special master found to be conclusory. However, the special master need not consider affidavits that are "highly generalized and conclusory," in which the affiants "fail to aver that they are familiar with the operative facts of th[e] case or that they have read the record or have 'eye ball' knowledge with regard to the proceedings." *Monteverdi v. Secretary of the Dep't of Health & Human Servs.*, 19 Cl.Ct. 409, 420 (1990). Because petitioner failed to offer any additional proof to support her claim to higher hourly rates, the court will not disturb the special master's attorney's fees findings.

## II. Attorneys' Hours

■ Petitioner objects to the special master's disallowance of 30.0 hours of Ms. Sacco's time and 70.6 hours of Mr. Walker's time because he found some of the work duplicative, or devoted to matters not under the Act. The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not "reasonably expended." *Griffin & Dickson v. United States*, 21 Cl.Ct. 1, 11 (1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933,

---

**3.** Throughout the period of Ms. Sacco's involvement, her ordinary billing rate ranged from $85 to $110/hour. Mr. Walker's ordinary billing rate for the period of his involvement ranged from $110 to $120/hour.

1939–40, 76 L.Ed.2d 40 (1983)). While petitioner points to the "complex nature of this case," nowhere does she articulate why it was necessary for two attorneys to spend over 120 hours to prepare for a three hour hearing, or why it was necessary for three members of Broad & Cassel to be present at that hearing. The court agrees with the special master that 120 hours amounts to "an unreasonable number of hours ... given the nature of the task at hand and the results achieved." *Id.* (citing *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984)).

Petitioner similarly fails to demonstrate why it was necessary for Mr. Walker to travel from Florida to Washington, D.C. to handle a five minute rebuttal during the presentation of oral argument on review of the special master's decision denying compensation under the Act. Neither the court, nor Special Master Baird, is aware of any reason why Ms. Sacco, who handled the argument in chief, capably could not provide the rebuttal. The court will not permit petitioner's practitioners to plunder the public fisc for something that comes dangerously close to a boondoggle. The court therefore upholds the special master's decision to disallow both the time Mr. Walker billed for his excursion, and the $806 in expenses for travel from Florida to Washington, D.C.

It is axiomatic that the burden is on the fee applicant to demonstrate by competent and probative evidence all elements of claimed fees. *See Monteverdi*, 19 Cl.Ct. at 408. A bald allegation that the complexity of this case dictated such extensive involvement of both attorneys simply fails to carry that burden.

### III. Non–Attorney Compensation

■ The next category of compensation at issue includes those fees paid to Broad & Cassel's law clerk and paralegals. At first glance, claims for employees falling into these categories do not fit neatly into a definition of "attorneys' fees" because these employees are not licensed attorneys. Nevertheless, in the context of another remedial statute, 42 U.S.C. § 1988, the Supreme Court held that because the labor of these employees "contributes to the work product for which an attorney bills her client," they may be included in the determination of attorneys' fees. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989). However, the court should base the permissible rate for this level of employee on those "prevailing in the relevant market," *Id.* at 286, 109 S.Ct. at 2470, not on what the law firm customarily charges its clients. *See United States v. Boeing Co.*, 747 F.Supp. 319, 323 (E.D.Va.1990).

■ Petitioner's first complaint under this heading stems from the special master's reduction of the fee charged for Patricia Chamberlin, a law clerk at Broad & Cassel. Petitioner would have the court accept the amount that Broad & Cassel customarily bills for work performed by a law clerk. Defendant argues that the relevant figure is what the firm actually paid Ms. Chamberlin. The court thinks both those figures immaterial, and instead would have insisted on proof of the market rate in the relevant community, which petitioner has failed to provide. The court will not accept as market rate petitioner's alleged customary $80/hour fee which certainly is on the high end of the scale, in any market, for someone who still is in law school. While the court acknowledges that $25/hour might be on the lower end of the scale, because petitioner has not provided the court with any evidence of actual market rates, the court cannot say that the special master abused his discretion in making this determination.

■ Petitioner next disputes the special master's reduction of the hourly rates charged for two of Broad & Cassel's paralegals. The special master reduced the rate charged for paralegal Ellen Jean Garside to $45/hour from $65/hour, basing his decision on paralegal rates allowed in vaccine cases in Chicago and Wichita. Petitioner argued that $65/hour is the rate it "customarily charges its clients ... for paralegal services in Orange County, Florida." However, it is "the rates and practices prevailing in the relevant market" that the court must consider, not merely the

rates petitioner charges. *See Missouri v. Jenkins*, 491 U.S. at 286, 109 S.Ct. at 2470–71. Petitioner nowhere even alleged that $65/hour is the prevailing market rate, nor does she indicate what that rate might be. Therefore, the court cannot say that the rate the special master allowed for Ms. Garside's paralegal work was arbitrary or capricious, based as it was on figures already deemed reasonable in other vaccine cases.[4]

■ The special master also reduced the rate charged for paralegal Sharon J. Burns, noting that "any adult" could have performed the services she provided. Petitioner contended that while some of Ms. Burns' tasks might appear clerical, they were, nonetheless, necessary. The court does not doubt that all the services were necessary, but does doubt that they necessarily had to be performed by a highly paid paralegal. If a task as easily can be performed by both a higher paid and a lower paid employee, the court thinks it unreasonable to choose the former. Moreover, the Supreme Court specifically has distinguished purely clerical or secretarial tasks, holding that those "tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. at 288 n. 10, 109 S.Ct. at 2472 n. 10. Therefore, the special master was well within his discretion in disallowing the higher fee. The allowed $30/hour rate is more than generous. Had the issue been before the court on first impression, it likely would have reduced Ms. Burns' rates even further, but it cannot find that the special master abused his discretion in this instance.

■ For the same reason, the court upholds the special master's total disallowance of the 1.2 hours at a $65/hour rate billed for Pam St. Andrews. Petitioner failed to explain why it was necessary for Ms. St. Andrews to travel to petitioner to get her affidavit signed at a cost of $78 when petitioner could have travelled to her attorney's office to sign it at no cost.

Even were the trip necessary, a possibility which the court in no way acknowledges, sending a highly paid paralegal to do a job easily accomplished by a lower paid messenger, or the mail, is, on its face, unreasonable. Petitioner's attorneys may run an inefficient business if they wish, but the court will not condone such inefficiency with an award of taxpayer money.

## IV. Costs

At the outset, the court feels compelled to define "costs." Although this seems somewhat pedestrian, apparently petitioner's attorneys do not understand the term. According to *Blacks Law Dictionary* 312 (5th ed. 1979), a "cost" is "[t]he sum or equivalent expended, paid, or charged for something." Conspicuously absent from this definition is any mention of profits. Congress, in allowing awards of costs in other remedial legislation, specifically has limited that award to one which *reimburses* a party for money expended in litigation. *See* 28 U.S.C. § 2412(a) (West Supp.1990). "Reimburse," in turn, means "[t]o pay back, to make restoration, to repay that expended." *Blacks Law Dictionary* 1157 (5th ed. 1979). From this, the court thinks it patently clear that a party is not entitled to a profit margin in a claim for costs, and will address petitioner's objection to the total disallowance of Westlaw charges accordingly.

■ The special master found that some of the Westlaw research time related to issues not under the Act, and that all research time bore a $4.50/minute surcharge above actual Westlaw costs. Petitioner did not dispute either of these findings, nor did her attorneys attempt to sort out the actual cost of that time in fact devoted to Vaccine Act issues. Petitioner's attorneys realistically cannot expect the court to allow a profit of $4.50/minute ($270/hour), nor can they submit a vague record of charges, only a portion of which might be compensable under the Act, and expect the special master, or the court, to

---

4. The special master also reduced the number of allowable hours for Ms. Garside from 92.5 to 50.0. Petitioner, while pointing out the reduc-

tion, apparently does not challenge this decision.

acquiesce in the claim. The court looks with great disfavor on the practice of including Westlaw charges for matters admittedly unrelated to the Act. With no way of ascertaining what portion of the Westlaw charges are legitimate, the special master may deny the entire claim. *See Martin v. United States,* 12 Cl.Ct. 223, 227 (1987) (where supporting documentation is inadequate, award may be reduced accordingly).

 Finally, petitioner disagrees with the special master's reduction by $2,500 the amount paid to Flick & Rogers, the accounting firm that prepared the present day valuation of Amber Sevier's future earning potential. Petitioner contends that Mr. Rogers spoke with the special master to determine what calculations were necessary, and thereafter provided exactly what the special master requested. The special master, however, found that the accountants did not use the standards required under the Act, rendering the conclusions reached of little benefit. Again, bald-faced assertions by petitioner that Mr. Rogers provided the special master with exactly what he requested fail to meet the burden of proof. Without so much as an affidavit from Mr. Rogers on this point, the court cannot say that the special master was arbitrary or capricious in his decision.

## CONCLUSION

Petitioner has failed to demonstrate that the special master was arbitrary, capricious, or abused his discretion in determining attorneys' fees and costs. For that reason, petitioner's motion for review is denied and the court, pursuant to 42 U.S.C.A. § 300aa–12(e)(2)(A), hereby affirms the special master's Order Awarding Attorneys' Fees and Other Costs. The court declines petitioner's invitation to remand the case to Special Master Baird. Petitioner has had her day in court, and will not be given an additional opportunity to correct the errors committed the first time around, either through carelessness or otherwise.

The Clerk of the court is directed to enter judgment accordingly.

IT IS SO ORDERED.